# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

|  |  |  |
|---|---|---|
| GUILFORD COLLEGE, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:18-cv-0891 |
| | ) | |
| KIRSTJEN NIELSEN, in her official capacity as Secretary of Homeland Security, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND PARTIAL SUMMARY JUDGMENT

JOSEPH H. HUNT
Assistant Attorney General

WILLIAM C. PEACHEY
Director

GLENN M. GIRDHARRY
Assistant Director

JOSHUA S. PRESS
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Phone: (202) 305-0106
Facsimile: (202) 305-7000
e-Mail: joshua.press@usdoj.gov

*Attorneys for Defendants*

# TABLE OF CONTENTS

INTRODUCTION................................................................................................................1

STATUTORY AND REGULATORY BACKGROUND ................................................2

FACTUAL AND PROCEDURAL BACKGROUND ......................................................2

STANDARDS OF REVIEW ...........................................................................................3

I.      Preliminary Injunctive Relief............................................................................3

II.     Summary Judgment ...........................................................................................5

III.    The Administrative Procedure Act ....................................................................5

ARGUMENT....................................................................................................................7

I.      The Plaintiffs Have No Likelihood Of Success.................................................7

        A.      *Standing* .................................................................................................7

                i.      Organizational Plaintiffs ...............................................................8

                ii.     Ripeness And The Individual Plaintiffs......................................11

        B.      *Final Agency Action*............................................................................14

II.     Plaintiffs Fail To Demonstrate Immediate Irreparable Harm ...........................16

III.    The Threatened Injury To Certain Plaintiffs Does Not Outweigh The Harm To
        Defendants And The National Interest  …..……………………………………….... 19

        CONCLUSION ......................................................................................................20

# TABLE OF AUTHORITIES

## CASES

*Abbott Laboratories v. Gardner*,
    387 U.S. 136 (1967) ........................................................................................................ 11, 12

*Action Alliance of Senior Citizens v. Heckler*,
    789 F.2d 931 (D.C. Cir. 1986) ................................................................................................ 13

*Aggarao v. MOL Ship Mgmt. Co.*,
    675 F.3d 355 (4th Cir. 2012) .................................................................................................... 3

*Almy v. Sebelius*,
    679 F.3d 297 (4th Cir. 2012) ................................................................................................ 5, 6

*Am. Legal Found. v. FCC*,
    808 F.2d 84 (D.C. Cir. 1987) ................................................................................................... 9

*Amoco Prod. Co. v. Vill. of Gambell*,
    480 U.S. 531 (1987) ................................................................................................................. 4

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................................................................. 5

*Appalachian Energy Group v. EPA*,
    33 F.3d 319 (4th Cir. 1994) .................................................................................................... 14

*Atchison, Topeka & Santa Fe Ry. Co. v. Wichita Bd. Of Trade*,
    412 U.S. 800 (1973) ................................................................................................................. 6

*Atieh v. Riordan*,
    727 F. 3d 73 (1st Cir. 2013) ..................................................................................................... 1

*Audubon Naturalist Soc'y of The Cent. Atl. States, Inc. v. DOT*,
    524 F. Supp. 2d 642 (D. Md. 2007) ........................................................................................ 5

*Belle Co. v. U.S. Army Corps of Eng'rs*,
    761 F.3d 383 (5th Cir. 2014) .................................................................................................. 14

*BellSouth Telecomm., Inc. v. MCIMetro Access Transmission Serv., LLC*,
    425 F.3d 964 (11th Cir. 2005) ................................................................................................ 18

*Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co.*,
    550 F.2d 189 (4th Cir. 1977) .................................................................................................... 4

ii

*Buffalo Cent. Terminal v. United States*,
    886 F. Supp. 1031 (W.D.N.Y. 1995) ......................................................... 5

*Cabaccang v. USCIS*,
    627 F.3d 1313 (9th Cir. 2010) ................................................................. 15

*Capital Assoc. Indus., Inc. v. Cooper*,
    129 F. Supp. 3d 281 (M.D.N.C. 2015) ................................................... 3, 4

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ................................................................................ 5

*Center for Auto Safety v. Peck*,
    751 F.2d 1336 (D.C. Cir. 1985) .............................................................. 6

*Charter Fed. Sav. Bank v. Office of Thrift Supervision*,
    976 F.2d 203 (4th Cir. 1992) .............................................. 11, 12, 13, 14

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) .................................................................................. 10

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ................................................................................ 8

*Comm. of the N. Mariana Islands v. United States*,
    670 F. Supp. 2d 65 (D.D.C. 2009) ......................................................... 20

*Dennis v. Columbia Colleton Med. Ctr., Inc.*,
    290 F.3d 639 (4th Cir. 2002) ................................................................. 5

*Dhakal v. Sessions*,
    895 F.3d 532 (7th Cir. 2018) ................................................................. 15

*Direx Israel, Ltd. v. Breakthrough Med. Corp.*,
    952 F.2d 802 (4th Cir. 1991) ........................................................... 16, 17

*eBay, Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006) ................................................................................ 3

*Envt'l Coal. v. Aracoma Coal Co.*,
    556 F.3d 177 (4th Cir. 2009) ................................................................. 6

*Ergon-W. Virginia, Inc. v. EPA*,
    896 F.3d 600 (4th Cir. 2018) ................................................................. 5

iii

*FCC v. Fox Television Stations, Inc.*,
  556 U.S. 502 (2009) ........................................................................ 6

*Franklin v. Massachusetts*,
  505 U.S. 788 (1992) ........................................................................ 14

*FW/PBS, Inc. v. City of Dallas*,
  493 U.S. 215 (1990) ........................................................................ 8

*Gas Co. v. FERC*,
  758 F.2d 669 (D.C. Cir. 1985) ....................................................... 19

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982) ........................................................................ 9

*Heideman v. South Salt Lake City*,
  348 F.3d 1182 (10th Cir. 2003) ..................................................... 18

*In re Microsoft Corp. Antitrust Litig.*,
  333 F.3d 517 (4th Cir. 2003) .......................................................... 3

*Invention Submission Corp. v. Rogan*,
  357 F.3d 452 (4th Cir. 2004) ......................................................... 14

*Jama v. DHS*,
  760 F.3d 490 (6th Cir. 2014) ......................................................... 15

*Kemler v. Poston*,
  108 F. Supp. 2d 529 (E.D. Va. 2000) ............................................ 14

*Kurfees v. INS*,
  275 F.3d 332 (4th Cir. 2001) ......................................................... 15

*Massieu v. Reno*,
  91 F.3d 416 (3d Cir. 1996) ............................................................ 14

*McBurney v. Cuccinelli*,
  616 F.3d 393 (4th Cir. 2010) ......................................................... 10

*Md. Highways Contractors Ass'n v. Maryland*,
  933 F.2d 1246 (4th Cir. 1991) ............................................. 9, 10, 11

*Motor Vehicles Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) ..................................................................... 5, 6

iv

*Nat'l Taxpayers Union v. United States*,
    68 F.3d 1428 (D.C. Cir. 1995) ........................................................... 9

*New Motor Vehicle Bd. v. Orrin W. Fox Co.*,
    434 U.S. 1345 (1977) ........................................................................ 20

*Nken v. Holder*,
    556 U.S. 418 (2009) ................................................................... 18, 19

*Outdoor Amusement Bus. Ass'n, Inc. v. DHS*,
    334 F. Supp. 3d 697 (D. Md. 2018) ..................................................... 5

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) .......................................................................... 10

*Pashby v. Delia*,
    709 F.3d 307 (4th Cir. 2013) ......................................................... 3, 4

*Qureshi v. Holder*,
    663 F.3d 778 (5th Cir. 2011) ............................................................ 15

*Reg'l Mgmt. Corp., Inc. v. Legal Servs. Corp.*,
    186 F.3d 457 (4th Cir. 1999) ............................................................ 12

*Reiter v. Cooper*,
    507 U.S. 258 (1993) .......................................................................... 14

*Rum Creek Coal Sales, Inc. v. Caperton*,
    926 F.2d 358 (4th Cir. 1991) ............................................................ 16

*S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands*, LLC,
    713 F.3d 175 (4th Cir. 2013) ....................................................... 8, 11

*Scotts Co. v. United Indus. Corp.*,
    315 F.3d 264 (4th Cir. 2002) ............................................................ 16

*Simon v. E. Ky. Welfare Rights Org.*,
    426 U.S. 26 (1976) ....................................................................... 9, 10

*Southdown, Inc. v. Moore McCormack Res., Inc.*,
    686 F. Supp. 595 (S.D. Tex. 1988) ................................................... 19

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) .......................................................................... 11

v

*Texas v. United States,*
    523 U.S. 296 (1998) ............................................................................... 13

*Trudeau v. FTC,*
    456 F.3d 178 (D.C. Cir. 2006) ............................................................... 14

*United States v. Menendez,*
    48 F.3d 1401 (5th Cir. 1995) .............................................................. 1, 3

*Wagner v. Bd. of Educ.,*
    335 F.3d 297 (4th Cir. 2003) .................................................................. 3

*Warth v. Seldin,*
    422 U.S. 490 (1975) ................................................................................. 8

*Wayte v. United States,*
    470 U.S. 598 (1985) ............................................................................... 20

*Weinberger v. Romero-Barcelo,*
    456 U.S. 305 (1982) ............................................................................... 19

*Williams v. Wilson,*
    762 F.2d 357 (4th Cir. 1985) .................................................................. 6

*Winter v. Nat. Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) ................................................................................ 3, 4

## STATUTES

5 U.S.C. § 706(2)(A) .................................................................................. 5

5 U.S.C. § 702 ............................................................................................. 5

6 U.S.C. § 111(b)(1)(F) ............................................................................ 20

8 U.S.C. § 1182(a)(9) ............................................................................... 16

8 U.S.C. § 1182(a)(9)(B) ................................................................... *passim*

8 U.S.C. § 1182(B) ................................................................................... 17

8 U.S.C. § 1440 ............................................................................. 8, 13, 15

8 U.S.C. §§ 1227(a)(1)(C) ....................................................................... 17

vi

**REGULATIONS**

8 C.F.R. § 214.2(f)(16) ................................................................................................................ 18

## INTRODUCTION

Federal Defendants, by and through undersigned counsel, hereby oppose both Plaintiffs' motion for preliminary injunction (ECF No. 15) as well as its supporting memorandum of law (ECF No. 16) (hereinafter, "Plaintiffs' Motion" or "Pls.' Mot."). Fundamentally, neither a preliminary injunction nor partial summary judgment are proper at this time because the Plaintiffs are not attempting to maintain the status quo while this case moves forward; they are instead seeking resolution of an entire Administrative Procedure Act ("APA") suit through a preliminary injunction, effectively bypassing the normal manner of review under the APA. This would set a dangerous precedent that would harm the Defendants and the public interest as a whole. Similarly, summary judgment at this time in an APA case—before any administrative record has been compiled or proffered to the Plaintiffs—is wholly inappropriate. *See Atieh v. Riordan*, 727 F. 3d 73, 77 (1st Cir. 2013) (reversing and remanding for failure of government to provide district court with a certified copy of the administrative record); *see also United States v. Menendez*, 48 F.3d 1401, 1409–10 (5th Cir. 1995) (same).

This mistaken approach is compounded by the fact that neither the organizational Plaintiffs, nor the individual Plaintiffs have standing. In fact, the individual Plaintiffs' APA claims are wholly inappropriate to consider while they and the individual Plaintiffs are still in the middle of ongoing agency action before the U.S. Department of Defense ("DOD")—much less any future inadmissibility determination under U.S.C. § 1182(a)(9)(B)—which would require several speculative events to transpire. In short, the Plaintiffs are not entitled to any sort of preliminary injunctive relief at this time, and certainly not summary judgment.

- 1 -

## STATUTORY AND REGULATORY BACKGROUND

Defendants incorporate by reference the "Legal Background" section in their Memorandum of Law in Support of their Motion to Dismiss. *See* ECF No. 31 at 1–11.

## FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiffs here include six organizational entities and two individuals who seek enlistment in the United States military through the DOD's Military Accessions Vital to the National Interest ("MAVNI") recruitment program. *See* Pls.' Mot. at 5–6. They challenge the August PM by USCIS concerning the accrual of "unlawful presence" by nonimmigrant students and exchange visitors who fail to maintain their status or violate the conditions of their admission, such as by remaining within the United States after they have completed the course of study for which they were admitted. The organizational Plaintiffs generally allege that the most August PM will alter how they handle international students and that students may leave their institutions as a result of the PM, as well as association standing based on behalf of their "members"—in this case their students. *See id.* at 6–7.

The individual Plaintiffs are aliens who were admitted as nonimmigrant students but remained in the United States after they completed their studies. They would prefer the manner in which unlawful presence is calculated for nonimmigrants admitted for duration of status as set forth USCIS's 2009 policy memorandum (apparently, the "procedural rights" they wish to vindicate in the instant action have no application to that previous internal guidance), *id.* at 5–6, but are still in the middle of a background check process with DOD that may allow them to "enlist in the armed forces" and put them on a path toward "fast-tracked citizenship," *id.* at 3. They seek injunctive relief because they believe they will be inadmissible from the United States bar at some

- 2 -

indefinite time in the future because they chose not to maintain their F-1 nonimmigrant status and now fear that they will have accrued over 180 days of unlawful presence by February 2019 under the August PM. But the inadmissibility ground that concerns these Plaintiffs will only apply to them if they do not become eligible for military naturalization; choose not to leave the United States before accruing more than 180 days of unlawful presence; leave the United States after that time and seek readmission within three or ten years of their departure after acquiring another nonimmigrant or immigrant visa. *See id.* at n.2; 8 U.S.C. § 1182(a)(9)(B).

## STANDARDS OF REVIEW

### I.        Preliminary Injunctive Relief.

A preliminary injunction is an extraordinary remedy involving the exercise of a very far-reaching power that is only to be employed in the limited circumstances that demand it. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 524 (4th Cir. 2003), *abrogated on other grounds by eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006). Whether to grant this relief is in the sound discretion of the court. *Winter*, 555 U.S. at 24. "Courts generally employ preliminary injunctions for the limited purpose of preserving the status quo during the course of litigation in order to prevent irreparable harm and to preserve the ability of the court to render meaningful relief on the merits." *Capital Assoc. Indus., Inc. v. Cooper*, 129 F. Supp. 3d 281, 288 (M.D.N.C. 2015) (Biggs, J.). The Fourth Circuit has defined the status quo as the "last uncontested status between the parties which preceded the controversy." *Pashby v. Delia*, 709 F.3d 307, 320 (4th Cir. 2013) (quoting *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 378 (4th Cir. 2012)). The party seeking a preliminary injunction bears the burden of justifying such relief. *Wagner v. Bd. of Educ.*, 335 F.3d 297, 302 (4th Cir. 2003).

- 3 -

To prevail on a motion for preliminary injunction, a party must establish that (1) the party is likely to succeed on the merits, (2) the party is likely to suffer irreparable harm without preliminary injunctive relief, (3) the balance of the equities tips in the party's favor, and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. A "clear showing of likelihood of success on the merits and irreparable harm is required in addition to satisfying the other factors before a preliminary injunction can be entered." *Capital Assoc. Indus.*, 129 F. Supp. 3d at 288 (internal quotations omitted). While courts previously employed a "'flexible interplay' among all the factors" in considering whether to grant a preliminary injunction, *Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co.*, 550 F.2d 189, 196 (4th Cir. 1977), the Fourth Circuit now requires that "each preliminary injunction factor be satisfied as articulated," *Pashby*, 709 F.3d at 320 (internal quotation marks omitted).

Such a remedy "does not follow from success on the merits as a matter of course." *Winter*, 555 U.S. at 32. "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Id.* at 24 (quoting *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987)). In doing so, the Supreme Court has instructed federal courts to "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.* Thus, even in cases where a plaintiff has shown likelihood of success on the merits and irreparable harm, the balance of equities and the public interest factors can weigh in favor of denying a preliminary injunction. *See id.* at 23–24, 31 n.5, and 32.

- 4 -

## II.        Summary Judgment.

Summary judgment is only proper if there are no issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is often an appropriate mechanism for deciding claims arising under the APA. *Audubon Naturalist Soc'y of The Cent. Atl. States, Inc. v. DOT*, 524 F. Supp. 2d 642, 660 (D. Md. 2007). However, summary judgment will be inappropriate where resolution of a claim requires the fact-finder to make dig into facts and make credibility determinations. *See Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002); *see also Buffalo Cent. Terminal v. United States*, 886 F. Supp. 1031, 1047–48 (W.D.N.Y. 1995) (denying summary judgment on an APA claim because of credibility issues related to bad faith and pretext).

## III.        The Administrative Procedure Act.

The APA provides for judicial review of final agency actions. *See* 5 U.S.C. §§ 702 and 704; *Ergon-W. Virginia, Inc. v. EPA*, 896 F.3d 600, 609 (4th Cir. 2018). Under the APA, courts may only hold unlawful and set aside agency action, findings, and conclusions that it finds to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A); *Outdoor Amusement Bus. Ass'n, Inc. v. DHS*, 334 F. Supp. 3d 697, 711 (D. Md. 2018). This standard of review is narrow and does not give the court the authority to substitute its judgment for that of the agency. *See, e.g.*, *Almy v. Sebelius*, 679 F.3d 297, 302 (4th Cir. 2012); *see also Motor Vehicles Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29,

43 (1983). The court's review under this standard is deferential "'with a presumption in favor of finding the agency action valid.'" *Almy*, 679 F.3d at 302 (quoting *Ohio Vall. Envt'l Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009)). An agency action is generally not considered arbitrary and capricious or an abuse of discretion "so long as 'the agency has examined the relevant data and provided an explanation of its decision that includes a rational connection between the facts found and the choice made.'" *Id.* (quoting *Ohio Vall. Envt'l Coal.*, 556 F.3d at 192) (internal quotations omitted). And review of military agency decisions is especially deferential, as they have "far greater experience … in deciphering the content and effect of military regulations and should be permitted to exercise [their] expertise." *Williams v. Wilson*, 762 F.2d 357, 360 (4th Cir. 1985).

The same narrow, deferential standard of review applies where an agency changes its policies or practices. *See AFL-CIO v. Brock*, 835 F.2d 912, 918 (D.C. Cir. 1987). An agency may flatly reverse its past policy as long as it sets forth the reason for its decision. *See Atchison, Topeka & Santa Fe Ry. Co. v. Wichita Bd. Of Trade*, 412 U.S. 800, 808 (1973). As explained by the Court, all that is required for "an agency changing its course" is "a reasoned analysis." *State Farm*, 463 U.S. at 57 (quotations omitted); *accord FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). Indeed, the agency "need not demonstrate to a court's satisfaction that the reasons for the new policy are *better* than the reasons for the old one," *id.* (emphasis in original). Thus, where the agency is called on to weigh the costs and benefits of alternative policies, courts are usually hesitant to interfere given how such calls "epitomize the types of decisions that are most appropriately entrusted to the expertise of an agency." *Center for Auto Safety v. Peck*, 751 F.2d 1336, 1342 (D.C. Cir. 1985) (Scalia, J.).

- 6 -

**ARGUMENT**

All Plaintiffs moved for a preliminary injunction and partial summary judgment on their claims that: (1) the August PM was improperly issued under the APA; and (2) the August PM is substantively unlawful because it allegedly conflicts with the INA. But they have failed to demonstrate a substantial likelihood of success on the merits of these claims because they do not have standing, and the individual plaintiffs are still pending agency action with the DOD and have failed to demonstrate that the U.S. Department of Homeland Security ("DHS") or any other agency has taken final agency action to determine that they are inadmissible under 8 U.S.C. § 1182(a)(9)(B). Without satisfying their jurisdictional requirements, preliminary injunctive relief is inappropriate and the case should instead be dismissed.

**I.       The Plaintiffs Have No Likelihood Of Success.**

   *A.  Standing*

The first fundamental flaw with Plaintiffs' case is that they lack standing to challenge the August PM. The organizational Plaintiffs do not expressly identify the capacity in which they bring this suit. Regardless, they make little or no attempt to identify any injury whatsoever to their own interests as organizations, merely pointing to the fact that they have current (not former) nonimmigrant students—who are presently enrolled in courses of study—amongst their ranks (that is, students who are maintaining their nonimmigrant status and are not alleged to have taken any action to violate their status). Pls.' Mot. at 6–7. Such organization and their current nonimmigrant students are not subject to the August PM at all. Their allegations are, therefore, patently insufficient to establish standing.

The individual Plaintiffs similarly lack do not yet have standing because their claims are unripe. If the Army ultimately finds that they are suitable for military service and they begin serving honorably during a designated time of conflict, they may become eligible for military naturalization under 8 U.S.C. § 1440, without regard to whether they have accrued any period of unlawful presence. Even if they are not found suitable for military service, they will not become inadmissible based on the accrual of unlawful presence until they accrue at least 180 days of unlawful presence, depart the United States, and then seek admission within three or ten years. 8 U.S.C. § 1182(a)(9)(B). It remains entirely speculative whether they will ever find themselves inadmissible under 8 U.S.C. § 1182(a)(9)(B).

i.      Organizational Plaintiffs

To establish Article III standing, an organization suing on its own behalf must meet the familiar standing requirements that apply to individuals: (1) injury in fact; (2) causation; and (3) redressability. *See, e.g.*, *S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013). As the parties invoking the Court's jurisdiction, the Plaintiff-organizations bear the burden "clearly to allege facts demonstrating" each of these three elements. *Warth v. Seldin*, 422 U.S. 490, 518 (1975). The necessary facts "must affirmatively appear in the record" and "cannot be inferred argumentatively from averments in the pleadings." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990). The standing inquiry is "especially rigorous" where, as here, "reaching the merits of the dispute would force [a court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (citation omitted).

- 8 -

Here, the Plaintiff-organizations are not the object of the August 2018 PM whatsoever. Nor are their current nonimmigrant students or members. Instead, a generous reading of the Complaint reveals, at most, their dissatisfaction with the alleged effects of the PM on *former* foreign students who have, by definition, lost their connection to the universities.[1] But an "organization's abstract concern with a subject that could be affected by an adjudication does not substitute for the concrete injury required by Article III." *Md. Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1251 (4th Cir. 1991) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 (1976)).

Nor do the Plaintiff-organizations show any injury to their own activities. To satisfy Article III under this theory of standing, an organization must demonstrate a "concrete and demonstrable injury to the organization's activities—with [a] consequent drain on the organization's resources— constitut[ing] ... more than simply a setback to the organization's abstract social interests." *Nat'l Taxpayers Union v. United States*, 68 F.3d 1428, 1433 (D.C. Cir. 1995) (alterations in original) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). "Such a showing requires 'more than allegations of damage to an interest in "seeing" the law obeyed or a social goal furthered.'" *Id.* (quoting *Am. Legal Found. v. FCC*, 808 F.2d 84, 92 (D.C. Cir. 1987)). Rather, "the organization must allege that discrete programmatic concerns are being directly and adversely affected" by the challenged action. *Id.* (alteration and citation omitted). Here, the vast majority of the Plaintiff-organizations do not even try to meet this test. Only the New School and Haverford College have alleged *any* change in their practices. Pls.' Compl. at 8–9.

---

[1] The American Federation of Teachers (AFT) Plaintiff organization fares no better on this front because its anonymous members in this litigation, John and Janes Doe, are *current* F-1 students and thus have not yet been affected by the PM. *See* ECF Nos. 16-5, 16-6, 16-7.

Otherwise, the most the Plaintiff-organizations argue is that the August PM's application to any of their current or future foreign students might cause them to change how they handle the "student-university relationship" with foreign students. Pls.' Compl. ¶ 46. Even assuming this allegation of injury is sufficient for purposes of organizational standing, it fails to allege an ongoing injury that would entitle them to the injunctive relief they seek. *McBurney v. Cuccinelli*, 616 F.3d 393, 410–11 (4th Cir. 2010) ("to maintain standing for declaratory and injunctive relief" a plaintiff must "plead an[ ] ongoing injury" (emphasis omitted)). To satisfy the case or controversy requirement of Article III in an action seeking only prospective relief through an injunction or declaratory judgment, a plaintiff must show exposure to illegal conduct accompanied by "continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974); *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) ("Absent a sufficient likelihood that he will again be wronged in a similar way, [plaintiff] is no more entitled to an injunction than any other citizen"). Here, the sole allegation of injury to organizational standing relates to an alleged diversion of resources to assist foreign students, a purported injury that is entirely unripe (see below). In the absence of an ongoing injury to its own activities, consisting of more than harm to its "abstract concern" for immigrant rights, the Plaintiff-organizations lack standing to obtain the prospective injunctive relief they seek. *Md. Highways Contractors Ass'n*, 933 F.2d at 1251; *McBurney*, 616 F.3d at 411.

Because the Plaintiff-organizations do not sufficiently allege injury to themselves in their own right, "they can establish standing only as representatives of those of their members who have been injured in fact." *Simon*, 426 U.S. at 40 (citation omitted). Here, it is a stretch to say that students are "members" of the universities. *See* Pls.' Mot. at 7.

- 10 -

In this case, aside from the AFT, the organizations fail to identify any particular member allegedly harmed by the August PM, and that alone dooms any claim of representational standing. To plead representational standing, the Plaintiff-organizations must allege that "(1) [their] own members would have standing to sue in their own right; (2) the interests the organization[s] seek[] to protect are germane to the organization[s'] purpose; and (3) neither the claim nor the relief sought requires the participation of individual members in the lawsuit." *Md. Highways Contractors Ass'n*, 933 F.2d at 1251. To satisfy the first of these prongs, an association must at the very least name a specific member with standing for each claim it asserts. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009) (association must "name the individuals who were harmed"); *S. Walk at Broadlands Homeowner's Ass'n*, 713 F.3d at 184 (association must "identify a single specific member" who was injured). Only AFT's John and Janes Doe could fit this bill, but they do not because, as explained below, their claims are unripe. General allegations, or listing how many nonimmigrant students are currently enrolled in the Plaintiff-organizations, do not satisfy the elements of representational standing. *See Summers*, 555 U.S. at 498. Accordingly, the Court should also reject any claim of representational standing.

ii.    Ripeness And The Individual Plaintiffs

A related issue regarding both the AFT's Doe members and the individual Plaintiffs' standing is ripeness. For a case or controversy to be ripe for judicial review, it must involve "an administrative decision [that] has been formalized and its effects felt in a concrete way by the challenging parties." *Charter Fed. Sav. Bank v. Office of Thrift Supervision,* 976 F.2d 203, 208 (4th Cir. 1992). This description and others attempt to flesh out the holding of the seminal case on this point, *Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967), *overruled on other grounds by*

- 11 -

*Califano v. Sanders,* 430 U.S. 99 (1977). *Abbott* requires that two questions be asked: (1) are the issues fit for judicial review and (2) will hardship fall to the parties upon withholding court consideration? *Id.* at 149. This is important because it goes to both standing as well as the "interest in avoiding unnecessary adjudication and in deciding issues in a concrete setting." *Reg'l Mgmt. Corp., Inc. v. Legal Servs. Corp.,* 186 F.3d 457, 465 (4th Cir. 1999).

The Fourth Circuit has clarified the first prong of this test as a case involving "purely legal [issues] and where the agency rule or action giving rise to the controversy is final and not dependent upon future uncertainties or intervening agency rulings." *Charter Fed.*, 976 F.2d at 208. That is entirely lacking for the AFT's Doe members because it is entirely uncertain whether the challenged PM will even apply to them, and it certainly does not apply to them now. *See* ECF Nos. 16-5, 16-6, 16-7. They merely allege that they are current F-1 nonimmigrant students who may be affected in the future based upon unspecified violations of their nonimmigrant status that they may or may not commit in the future. *Id.* However, AFT's Doe members are not subject to the August PM because, as nonimmigrant students who are maintaining their nonimmigrant status, they are not accruing unlawful presence that could subject them to inadmissibility under 8 U.S.C. § 1182(a)(9)(B) if they depart the United States and thereafter seek admission within the inadmissibility period. It is unclear that they would even have a basis to seek admission to the United States after triggering the unlawful presence bar. Simply put, AFT's Doe members' claim is not ripe for decision.

And as for Plaintiffs Sen Li and Jia Ye, it is entirely unclear whether the August PM will ever affect them while their military-service suitability determinations are still pending with DOD. *See* Pls.' Mot. at 3. A favorable military service suitability determination would likely enable them

- 12 -

to complete military service that would then render them eligible for naturalization under 8 U.S.C. § 1440. There is no unlawful presence bar to naturalization; rather, the unlawful presence ground of inadmissibility would only apply to the individual Plaintiffs if they accrue at least 180 days of unlawful presence, depart the United States, and then seek admission within the 3- or 10-year inadmissibility period. 8 U.S.C. § 1182(a)(9)(B). Similar to the AFT Doe members, it remains entirely speculative whether they will ever find themselves in this situation. In short, their case is not fit for judicial decision because further agency action is still pending on their military service suitability determinations, and neither DHS nor the U.S. Department of State ("State Department") has taken any final agency action to determine that an unlawful presence bar applies to them. As the Supreme Court has explained, "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States,* 523 U.S. 296, 300 (1998) (internal quotation omitted); *accord Action Alliance of Senior Citizens v. Heckler*, 789 F.2d 931, 940 (D.C. Cir. 1986) (R. B. Ginsburg, J.)). This makes judicial action inappropriate at this time.

Fourth Circuit precedent is in line with this principle. In *Charter Federal*, a financial institution sought a ruling from the FDIC as to the enforceability of a contract before the FDIC even threatened any action against the institution. The court of appeals held that the case was not ripe for review. *Id.* at 207. This is entirely applicable to the individual Plaintiffs here. The Fourth Circuit found that "several contingencies separate[d] Charter from a threat of final agency action," and, therefore, held that "the tentative nature of the FDIC's involvement renders Charter's claims not ripe[.]" *Id.* at 209. And even more like this case, the Fourth Circuit has ruled that judicial review was not proper for a challenge to an internal EPA memorandum discussing a new

- 13 -

permitting system. *See Appalachian Energy Group v. EPA*, 33 F.3d 319, 322 (4th Cir. 1994). In

other words, "the agency rule or action giving rise to the controversy ... [is not yet] final and …

dependent upon future uncertainties or intervening agency rulings," *Charter Fed.*, 976 F.2d at 208,

making the effects upon the individual Plaintiffs "dependent upon numerous contingencies,"

*Kemler v. Poston*, 108 F. Supp. 2d 529, 541 (E.D. Va. 2000).

B.   *Final Agency Action*

Another jurisdictional concern exists here because there has not yet been final agency

action regarding the individual Plaintiffs. If the challenged agency action is not "final" under the

APA, a court must dismiss the complaint for lack of subject matter jurisdiction. *Invention

Submission Corp. v. Rogan,* 357 F.3d 452, 460 (4th Cir. 2004).[2] The "core question" is whether

an action marks the completion of the "decisionmaking process, and whether the result of that

process is one that will directly affect the parties." *Franklin v. Massachusetts,* 505 U.S. 788, 797

(1992). Thus, "[w]here relief is available from an administrative agency, the plaintiff is ordinarily

required to pursue that avenue of redress before proceeding to the courts, and until that recourse is

exhausted, suit is premature and must be dismissed." *Reiter v. Cooper*, 507 U.S. 258, 269 (1993);

*accord Massieu v. Reno*, 91 F.3d 416, 421 (3d Cir. 1996) (Alito, J.) ("[I] it is well settled that

judicial review is precluded if the alien has failed to avail himself of all administrative remedies[.]"

(quotations and citations omitted)). Anything less is contrary to the APA's statutory framework

and would allow Plaintiffs to raise their claims in district court to effectively "bypass the

---

[2]     There is a circuit split on this question as to whether APA finality is truly jurisdictional.
*Compare Trudeau v. FTC*, 456 F.3d 178, 184–85 (D.C. Cir. 2006) (merits), *with Belle Co. v. U.S.
Army Corps of Eng'rs*, 761 F.3d 383, 387–88 (5th Cir. 2014) (jurisdictional).

administrative process" and undermine Congress' intent to streamline judicial review and conserve judicial resources. *Kurfees v. INS*, 275 F.3d 332, 336 (4th Cir. 2001).

This requirement bars the individual Plaintiffs' suit because, as noted above, neither DHS nor the State Department has taken any final agency action to determine that either of the individual Plaintiffs is inadmissible under 8 U.S.C. § 1182(a)(9)(B). And again, several conditions precedent to such action have not occurred, including the individual Plaintiffs' accruing the requisite period of unlawful presence, departing the United States, and thereafter seeking admission within the applicable 3- or 10-year inadmissibility period. Moreover, the Army still has not rendered military service suitability determinations to decide whether the individual Plaintiffs will be permitted to serve in the United States Army, thereby potentially becoming eligible for military naturalization under 8 U.S.C. § 1440 such that the unlawful presence bar might not *ever* apply to them. *See* ECF Nos. 16-1, 16-2. And where there are still ongoing administrative processes that may entirely moot the underlying APA challenge, courts lack jurisdiction. *See, e.g.*, *Qureshi v. Holder*, 663 F.3d 778, 780–81 (5th Cir. 2011) (holding that termination of asylum is not a final agency action because it is "only an intermediate step in a multi-stage administrative process"); *Cabaccang v. USCIS*, 627 F.3d 1313, 1317 (9th Cir. 2010) (same); *see also Dhakal v. Sessions*, 895 F.3d 532, 540 & n.10 (7th Cir. 2018) (affirming APA dismissal because "the executive branch simply has not completed its review of Mr. Dhakal's claims and consequently has not made a final decision regarding his immigration status"); *Jama v. DHS*, 760 F.3d 490, 496 (6th Cir. 2014) ("The agencies' decisionmaking process consummates when they issue a final decision regarding an alien's immigration status.... [T]he operative question in this case for purposes of the APA is whether there is a final decision on Jama's *immigration status*." (emphasis in original)). Agency action is

- 15 -

considered final only to the extent that it imposes an obligation, denies a right, or fixes some legal relationship. That simply cannot be said to be the case right now because the individual Plaintiffs' claims are still in flux. Rather than obtaining preliminary injunctive relief or summary judgment, the case should be dismissed because there is not yet a truly "final" agency action for the individual Plaintiffs to challenge.

## II. Plaintiffs Fail To Demonstrate Immediate Irreparable Harm.

In evaluating a request for a preliminary injunction, courts must consider the degree of potential irreparable harm to the Plaintiffs. In fact, the required irreparable harm to the Plaintiffs must be *clearly shown*, *see Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 283 (4th Cir. 2002), and be neither remote nor speculative, but both *actual and imminent*, *see Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991). The lesser the Plaintiffs' showing of irreparable harm, the stronger the required showing on the merits. *See Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 358, 359 (4th Cir. 1991). But the Plaintiffs have not alleged injuries that are actual and imminent, or clearly shown, and thus fail to demonstrate the level of irreparable injury necessary to warrant the granting of preliminary relief.

Plaintiffs acknowledge that not one of them could be directly affected until at least one month from now, Pls.' Mot. at 18 ("February of 2019"), and overlook how the inadmissibility ground they ultimately fear is only triggered once a foreign national actually departs the United States and thereafter seeks admission within the 3- or 10-year inadmissibility period, *see* 8 U.S.C. § 1182(a)(9), something that has not yet occurred—and something not even alleged will occur to any Plaintiff here. Plaintiffs have thus failed to describe in any meaningful way how they might face harm until they actually depart the United States and seek admission within the inadmissibility

- 16 -

period, and the harm alleged by Plaintiff-organizations appear to be limited to a concern that unidentified individuals who were previously students *may* become inadmissible from the United States based upon past status violations.

The Plaintiff-organizations cite the Doe affidavits as an example, but as explained above, the Doe members do not allege that they have committed any status violation. *See* Pls.' Mot. at 19. Furthermore, to the extent that the irreparable harm consists of individuals facing adverse immigration consequences because they have violated their terms of their previously granted nonimmigrant status, that irreparable harm is not directly traceable to the August PM the Plaintiffs are now challenging. In other words, foreign nationasl who have violated their nonimmigrant status are subject to removal proceedings before an immigration judge and, subsequently, removal from the United States and the resulting bars to admission not limited to inadmissibility under 8 U.S.C. § 1182(B). *See* 8 U.S.C. §§ 1227(a)(1)(C), 1182(a)(9)(A)–(C). The method of calculating the length of an individual's unlawful presence is not the source of the harm to an individual who violated his or her nonimmigrant status; instead, the status violation *itself* is the source of that harm that carries a greater consequence than inadmissibility if the foreign national seeks admission 3 or 10 years after triggering the unlawful presence ground of inadmissibility (removal from the United States). In sum, the Plaintiffs do not allege sufficient irreparable harm to support a preliminary injunction. *See Direx Israel, Ltd.*, 952 F.2d at 816 ("[T]he grant of such relief ... where the harm is admittedly not present or immediate but merely problematic, conditioned on possible future events, would seem contrary to our stated rule."). Plaintiffs have shown nothing more in this case.

In an attempt to raise their claims to a level of "irreparable injury," Plaintiffs rely on pure speculation regarding what *may* happen to others potentially affected by the August PM, but

entirely fail to account for the myriad administrative processes that they are currently undertaking to avoid the consequences of unlawful presence, as well as other processes that have existed for quite some time for former nonimmigrant students, such as the SEVIS reinstatement process. *See* 8 C.F.R. § 214.2(f)(16). Instead, they complain that on the back end, "imposition of the reentry bar is not subject to judicial review" by citing to a vacated decision and pointing to the doctrine of consular nonreviewability. Pls.' Mot. at 19. Again, however, that aspect of immigration law would only be implicated for persons who have accrued more than 180 days of unlawful presence, departed the United States and subsequently seek admission during the inadmissibility period— not the Plaintiffs in this case. And prospective and speculative fears do not justify a preliminary injunction against the federal government when there is no indication that something like that is likely to occur imminently. *See, e.g.*, *Nken v. Holder*, 556 U.S. 418, 435 (2009) ("[S]imply showing some possibility of irreparable injury fails to satisfy [this] factor." (internal quotations and citation omitted)).

As for the Plaintiff-organizations, their claims likewise do not amount to actual and imminent irreparable injury. They allege a "substantial interest in preventing … injury" to F, J, and M nonimmigrant visas [sic] holders, Pls.' Mot. at 19, but do not explain how they might be imminently harmed when such nonimmigrants could only be affected by the August PM after they cease to maintain their nonimmigrant status, violate that status, or are otherwise no longer in a period of stay authorized. At best, then, the organizational Plaintiffs allege that they will suffer economic losses. But economic loss alone generally does not warrant the extraordinary relief of a preliminary injunction. *See, e.g.*, *BellSouth Telecomm., Inc. v. MCIMetro Access Transmission Serv., LLC*, 425 F.3d 964, 970 (11th Cir. 2005); *Heideman v. South Salt Lake City*, 348 F.3d 1182,

- 18 -

1189 (10th Cir. 2003) ("It is also well settled that simple economic loss usually does not, in and of itself, constitute irreparable harm."). And even though there is an exception to this rule when the potential harm could threaten the very existence of the business, *see Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam), the Plaintiffs have not alleged such a result here.

## III. The Threatened Injury To Certain Plaintiffs Does Not Outweigh The Harm To Defendants And The National Interest.

The final two factors required for preliminary injunctive relief—balancing of the harm to the opposing party and the public interest—merge when the Government is the opposing party. *See, e.g.*, *Nken*, 556 U.S. at 435. Here, courts must "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312–13 (1982).

At its core, Plaintiffs' motion is asking for special treatment from our nation's immigration laws, but they make no concrete showings that their alleged irreparable harm will outweigh the threatened harm that an injunction would cause, or that an injunction would not "adversely affect [the] public interest[.]" *Id.*; *Southdown, Inc. v. Moore McCormack Res., Inc.*, 686 F. Supp. 595, 596 (S.D. Tex. 1988) (petitioner's burden to show injunction causes "no disservice to unrepresented third parties"). Indeed, the Plaintiffs fail to acknowledge *any* potential harm to the Defendants or the public. This failure is fatal to Plaintiffs' request for the extraordinary remedy of a preliminary injunction.

In order for the August PM to apply to any foreign national, he or she must have failed to comply with the applicable immigration laws. Any order that enjoins a governmental entity from enforcing our immigration laws and incentivizing foreign nationals to remain in the United States after the expiration of their authorized period of stay, fail to maintain their status, or violate the

- 19 -

conditions under which they were admitted (such as by working without authorization), constitutes an irreparable injury that weighs heavily against the entry of injunctive relief. *See, e.g.*, *New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977). In this vein, the Supreme Court has specifically acknowledged that "[f]ew interests can be more compelling than a nation's need to ensure its own security." *Wayte v. United States*, 470 U.S. 598, 611 (1985). And here, an injunction against Defendants would flout these compelling interests by preventing the Government from enforcing the law and "ensuring … the overall economic security of the United States[.]" 6 U.S.C. § 111(b)(1)(F); *see also Comm. of the N. Mariana Islands v. United States*, 670 F. Supp. 2d 65, 85 (D.D.C. 2009) ("[I]mmigration laws necessarily have a significant impact on labor markets and practices[.]").

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiffs' Motion for a Preliminary Injunction and Partial Summary Judgment. The Plaintiffs cannot show that they have a likelihood of success on the merits; that they will be irreparably harmed absent injunctive relief; and that the balance of harms weighs in their favor; or that injunctive relief would be in the public interest.

- 20 -

Dated: January 9, 2019            Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

WILLIAM C. PEACHEY
Director

GLENN M. GIRDHARRY
Assistant Director

By: */s/ Joshua S. Press*
JOSHUA S. PRESS
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Phone: (202) 305-0106
Facsimile: (202) 305-7000
e-Mail: joshua.press@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will provide electronic notice and an electronic link to this document to all attorneys of record.

DATED:   January 9, 2019

By:  _/s/ Joshua S. Press_____
JOSHUA S. PRESS
Trial Attorney
United States Department of Justice
Civil Division

- 22 -

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.3(d), I hereby certify that this filing contains 6,151 words, excluding all parts of the brief exempted by that same rule.

DATED:   January 9, 2019

By:  */s/ Joshua S. Press*
JOSHUA S. PRESS
Trial Attorney
United States Department of Justice
Civil Division

- 23 -