# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

GUILFORD COLLEGE, *et al.*,

    *Plaintiffs*,

v.

KIRSTJEN NIELSEN, *et al.*,

    *Defendants*.

Civil Action No. 18-cv-891

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION AND PARTIAL SUMMARY JUDGMENT (DKT. 15)
AND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (DKT. 30)**

*Relief respectfully requested on or before
February 4, 2019*

# TABLE OF CONTENTS

Table of Authorities ..................................................................................................... i
Argument ..................................................................................................................... 1
    A.  The government does not defend its actions on the merits. .................................. 1
    B.  The individual plaintiffs' claims are ripe. ............................................................ 2
    C.  The organizational plaintiffs have standing. ......................................................... 5
    D.  The August 2018 memorandum is reviewable final agency action. ..................... 6
    E.  The Court need not await the administrative record. ........................................... 8
    F.  Plaintiffs have established irreparable harm, and the equities tip
        decidedly in their favor. ...................................................................................... 9
Conclusion ................................................................................................................ 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atieh v. Riordan*,
   727 F.3d 73 (1st Cir. 2013) ............................................................................... 8, 9

*Babbitt v. United Farm Workers Nat'l Union*,
   442 U.S. 289 (1979) ............................................................................................ 4

*Bennett v. Spear*,
   520 U.S. 154 (1997) ........................................................................................ 6, 7

*Broadgate Inc. v. USCIS*,
   730 F. Supp. 2d 240 (D.D.C. 2010) .................................................................... 7

*Cabaccang v. USCIS*,
   627 F.3d 1313 (9th Cir. 2010) ............................................................................. 8

*Chang v. United States*,
   327 F.3d 911 (9th Cir. 2003) ............................................................................... 5

*Charter Fed. Sav. Bank v. Office of Thrift Supervision*,
   976 F.2d 203 (4th Cir. 1992) ............................................................................... 2

*Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*,
   452 F.3d 798 (D.C. Cir. 2006) ............................................................................. 7

*Dhakal v. Sessions*,
   895 F.3d 532 (7th Cir. 2018) ............................................................................... 8

*Gratz v. Bollinger*,
   539 U.S. 244 (2003) ............................................................................................ 3

*Harmon v. Thornburgh*,
   878 F.2d 484 (D.C. Cir. 1989) ............................................................................. 3

*High v. R & R Transp., Inc.*,
   242 F. Supp. 3d 433 (M.D.N.C. 2017) ............................................................ 2, 7

*Int'l Refugee Assistance Project v. Trump*,
   883 F.3d 233 (4th Cir. 2018) ........................................................................... 3, 4

*Jama v. DHS*,
   760 F.3d 490 (6th Cir. 2014) ............................................................................... 8

*JEM Broad. Co. v. FCC*,
   22 F.3d 320 (D.C. Cir. 1994) ............................................................................... 5

**Cases—continued**

*League of Women Voters of U.S. v. Newby*,
 838 F.3d 1 (D.C. Cir. 2016) ................................................................................*passim*

*Metro. Wash. Airports Auth. v. Citizens for Abatement of Aircraft Noise, Inc.*,
 501 U.S. 252 (1991) ............................................................................................... 4

*Miller v. Brown*,
 462 F.3d 312 (4th Cir. 2006) .................................................................................. 3

*Nat'l Venture Capital Ass'n v. Duke*,
 291 F. Supp. 3d 5 (D.D.C. 2017) ............................................................................ 5

*NRDC v. EPA*,
 643 F.3d 311 (D.C. Cir. 2011) ................................................................................ 7

*Odebrecht Constr., Inc. v. Sec'y, Fla. Dep't of Transp.*,
 715 F.3d 1268 (11th Cir. 2013) ............................................................................ 10

*Oliver v. Baity*,
 208 F. Supp. 3d 681 (M.D.N.C. 2016) .................................................................... 2

*Pashby v. Delia*,
 709 F.3d 307 (4th Cir. 2013) ............................................................................. 2, 3

*Qureshi v. Holder*,
 663 F.3d 778 (5th Cir. 2011) .................................................................................. 8

*Regents of the Univ. of Cal. v. DHS*,
 908 F.3d 476 (9th Cir. 2018) .................................................................................. 3

*Robbins v. Rowan Vocational Opportunities, Inc.*,
 2018 WL 2338795 (M.D.N.C. 2018) ...................................................................... 2

*Sierra Club v. EPA*,
 873 F.3d 946 (D.C. Cir. 2017) ................................................................................ 7

*Sierra Club v. U.S. Dep't of Interior*,
 899 F.3d 260 (4th Cir. 2018) .................................................................................. 6

*United States v. Alabama*,
 691 F.3d 1269 (11th Cir. 2012) ............................................................................ 10

*United States v. Menendez*,
 48 F.3d 1401 (5th Cir. 1995) .................................................................................. 9

*Washington v. Trump*,
 847 F.3d 1151 (9th Cir. 2018) ................................................................................ 6

*Whitman v. Am. Trucking Ass'ns, Inc.*,
 531 U.S. 457 (2001) ............................................................................................... 7

# ARGUMENT

The government's briefs (which are effectively identical, other than cursory irreparable-harm and balance-of-equities contentions)—are most notable for what they *do not* say. The government does not defend the legality of the August 2018 unlawful-presence directive. It does not dispute that it acted unlawfully by foregoing the APA's notice-and-comment requirement, and it does not deny that the August 2018 memorandum is irreconcilable with the INA's text. The point bears repeating: In opposing our request for summary judgment and a preliminary injunction, the government does not even *attempt* to defend the substantive or procedural legality of its actions. That silence speaks volumes.

Rather than argue that its conduct is legal, the government instead asserts that this Court is powerless to do anything about it. Those arguments lack substance. As we demonstrated in our principal brief, plaintiffs have standing and will be irreparably harmed in the absence of injunctive relief.

Prompt relief is therefore imperative. Because the government has waived any argument on the merits in defense of its policy, and because there are no relevant disputed questions of fact, plaintiffs respectfully submit that the Court should grant summary judgment on the purely legal claims before it and enter a final judgment enjoining and vacating the August 2018 unlawful-presence directive. In the alternative, the Court should enter a preliminary injunction.

## A.  The government does not defend its actions on the merits.

The government does not attempt to defend the legality of USCIS's August 2018 policy memorandum on the merits. As we demonstrated in our motion (at 8-18), the August 2018 policy memorandum is both procedurally invalid for failing to observe the APA's no-

1

tice-and-comment procedures and substantively inconsistent with the INA's text. Disposition of these purely legal claims turns exclusively on the substance of the memo and the statutory text; it does not require the Court to consider the administrative record.

By not addressing these points, the government has conceded the illegality of USCIS's conduct for purposes of summary judgment. *E.g.*, *High v. R & R Transp., Inc.*, 242 F. Supp. 3d 433, 446 n.12 (M.D.N.C. 2017) (Biggs, J.) ("A party's failure to address an issue in its opposition brief concedes the issue."); *Oliver v. Baity*, 208 F. Supp. 3d 681, 690 (M.D.N.C. 2016) (Biggs, J.) (same, and collecting cases); *Robbins v. Rowan Vocational Opportunities, Inc.*, 2018 WL 2338795, at *6 n.9 (M.D.N.C. 2018) (Biggs, J.) (same).

In light of the government's concessions, the Court should grant summary judgment.

**B.     The individual plaintiffs' claims are ripe.**

The government says that the organizational plaintiffs lack standing and that the individuals plaintiffs' claims are not yet ripe. *See* P.I. Opp. 7-14; MTD 13-19. Each of those arguments is meritless, beginning most clearly with the individual plaintiffs.

**1.** As a threshold matter, the government's ripeness argument rests on a misdescription of plaintiffs' claims. Plaintiffs do not challenge any particular, individual unlawful-presence determinations that have yet to take place. Rather, they bring an APA challenge against USCIS's global, binding policy, memorialized in the August 2018 directive. All that is required in this context is that the "agency rule or action giving rise to the controversy" *itself* be "final and not dependent upon future uncertainties." *Charter Fed. Sav. Bank v. Office of Thrift Supervision*, 976 F.2d 203, 208 (4th Cir. 1992).

That is the case here—the August 2018 memorandum is final and presently being enforced, with "concrete effects." *Pashby v. Delia*, 709 F.3d 307, 317 (4th Cir. 2013). There is

2

therefore no ripeness obstacle to this *facial* APA challenge.[1]

*Pashby* is directly on point. There, the plaintiffs challenged a new Medicaid eligibility requirement. 709 F.3d at 313. The government argued that the plaintiffs' claim was unripe because they had not yet been judged ineligible for benefits under the new requirements. *Id*. at 317. The district court rejected that argument, and the Fourth Circuit affirmed. The court of appeals explained that the plaintiffs were "not challenging the outcome of the individual administrative appeals," but "instead contest[ing] the [agency's] decision to implement [a new global policy], which is certainly a formalized administrative decision with concrete effects." *Id*. at 317. It thus held the APA challenge was ripe. The court reached the same conclusion under similar circumstances in *International Refugee Assistance Project v. Trump*, 883 F.3d 233 (4th Cir. 2018) (en banc), explaining that "[r]ipeness here comes from the 'imposition of the barrier,' not the ultimate denial of a visa or waiver" in any one case. *Id*. at 263 (quoting *Gratz v. Bollinger*, 539 U.S. 244, 262 (2003)), *vacated on unrelated grounds*, 138 S. Ct. 2710 (*IRAP*). The same conclusion applies here.

Thus, properly framed, the ripeness inquiry asks only whether plaintiffs' challenge to USCIS's final agency action raises "issues [that are] purely legal," and whether "withholding court consideration" would impose a "hardship" on the regulated public generally. *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006). Both elements point in plaintiffs' favor. The questions whether notice-and-comment was required and whether the 2018 memorandum is consistent with the INA undeniably turn on purely legal issues. And the hardship of withholding

---

[1] "In some cases the 'agency action' [being challenged] will consist of a rule of broad applicability; and if the plaintiff prevails, the result is that the rule is invalidated, not simply that the court forbids its application to a particular individual." *Regents of the Univ. of Cal. v. DHS*, 908 F.3d 476, 511 (9th Cir. 2018); *accord Harmon v. Thornburgh*, 878 F.2d 484, 495 & n.21 (D.C. Cir. 1989).

3

judicial consideration is clear: Due to the doctrine of consular non-reviewability, they will have no opportunity to challenge any subsequent unlawful-presence determinations in court. Thus, "the cost to the parties of delaying judicial review would be to functionally deprive them of *any* judicial review." *IRAP*, 883 F.3d at 263. We made this point earlier (Opening Mem. 19), but the government disregards it.

**2.** Even if the ripeness question did turn on whether Sen Li and Jia Ye are facing imminent injury (it does not), their challenge would be ripe. Each is faced with a very real and immediate choice: Ye must either leave the country by February 4, 2019 (when, according to the calculation established in the August 2018 policy memorandum, USCIS will conclude he has accrued 180 days of unlawful presence) or otherwise face a mandatory three-year bar to reentry to this country after he next leaves. Li faces a deadline of February 20, 2019. The Sophie's choice presented by the August 2018 memorandum does not depend on any "contingent future events" (P.I. Opp. 13); it must be faced by the individual plaintiffs *now*.

The government's speculation that the Army might finally allow Li and Ye to enlist in the military after years of ignoring them (P.I. Opp. 12-13) does not change the calculus. The question would be whether there is "a realistic danger of sustaining a direct injury as a result of the [challenged policy's] operation or enforcement." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). There are just *two weeks* left for Ye to make the decision whether or not to leave the country. Li has just one month. Thus, "[t]he threat" that the Army will not act in time "hangs over [Li and Ye] like the sword over Damocles." *Metro. Wash. Airports Auth. v. Citizens for Abatement of Aircraft Noise, Inc.*, 501 U.S. 252, 265 (1991). And federal courts "do[] not require Damocles's sword to fall before [they will] rec-

4

ognize the realistic danger of sustaining a direct injury." *Chang v. United States*, 327 F.3d 911, 921 (9th Cir. 2003); *accord League of Women Voters v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016).

### C. The organizational plaintiffs have standing.

The individual plaintiffs' standing—which the government otherwise concedes—is a sufficient basis for the Court to enter final relief enjoining the directive. *See Nat'l Venture Capital Ass'n v. Duke*, 291 F. Supp. 3d 5, 12 (D.D.C. 2017) (concluding that individual plaintiffs have standing, declining to address organizational plaintiffs, and enjoining an immigration regulation). Even if that were not so, the institutions have standing.

As we showed in the opening memorandum (at 5-7), the organizational plaintiffs have standing because USCIS's unlawful-presence directive threatens them and their members with imminent injury. In addition, the agency's failure to provide an opportunity for public comment prior to acting has directly aggrieved all plaintiffs. *See* Opening Mem. 5-6; *JEM Broad. Co. v. FCC*, 22 F.3d 320, 326 (D.C. Cir. 1994) ("[W]hen a party complains of an agency's failure to provide notice and comment prior to acting, it is that failure which causes 'injury'; and interested parties are 'aggrieved' by the order promulgating the rules.").

The government rejoins (P.I. Opp. 9) that the August 2018 memorandum can only affect "former" students because it applies only to those who are no longer enrolled. But international students presently holding F-1 visas are surely within the zone of interests of the 2018 memorandum, which governs what happens to those students if and when they fall out-of-status, inadvertently or otherwise. Under USCIS's new interpretation, those students will have no opportunity to cure their status defects before beginning to accrue unlawful presence, imposing harsh immigration consequences, and in turn harming their educational

5

communities. *See* Dkts. 16-1 to 16-7. The effect of the rule is to forcibly terminate the relationship between college and student, injuring both the institution and individual. *E.g.*, Dkt. 16-3 ¶ 7. These harsh rules will also chill international students from attending U.S. universities. *E.g.*, Dkt. 16-3 ¶ 8; 16-4 ¶ 13. As such, the organizational plaintiffs have associational standing on behalf of their students (*e.g.*, *Sierra Club v. U.S. Dep't of Interior*, 899 F.3d 260, 282-83 (4th Cir. 2018); *Washington v. Trump*, 847 F.3d 1151, 1159-61 (9th Cir. 2018)) and in their own rights.

With respect to direct organizational standing, the government admits (P.I. Opp. 9) that the university plaintiffs have alleged the requisite "'perceptibl[e] impair[ment]' [of] the organization's programs." *League of Women Voters*, 838 F.3d at 8 (alteration incorporated). We have submitted evidence proving the point. Dkt. 16-3 ¶¶ 4-10.

**D.     The August 2018 memorandum is reviewable final agency action.**

The government asserts that "[a]nother jurisdictional concern exists here because there has not yet been final agency action regarding the individual Plaintiffs." P.I. Opp. 14.

This contention is just a different label on the same argument, and it once again elides two distinct issues. None of the plaintiffs challenge an *individual* unlawful-presence determination. Rather, they challenge USCIS's decision, embodied in the August 2018 memorandum, to establish new, binding, detrimental rules for unlawful-presence determinations. The government does not deny that the August 2018 memorandum is a final agency action subject to review under the APA. Nor could it. An agency action is "final" when the action "mark[s] the 'consummation' of the agency's decisionmaking process" and is "one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).

6

Both requirements are easily satisfied by the August 2018 memorandum. First, the memorandum is undoubtedly USCIS's "last word on the matter in question," which is the method for calculating the INA's unlawful-presence bar. *Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 478 (2001) (quotation omitted). The agency's redefinition of the unlawful presence clock is "not . . . of a merely tentative or interlocutory nature." *Bennett*, 520 U.S. at 178.

The adoption of the August 2018 memorandum is also an action "from which legal consequences will flow" because it is one that "alter[s]" the relevant "legal regime." *Bennett*, 520 U.S. at 178. Indeed, the memorandum's binding effect on USCIS decisionmakers (*see* Opening Mem. 8-11) is exactly the kind of "legal consequence[]" that makes an agency action final: An "agency's adoption of a binding norm obviously . . . reflect[s] final agency action." *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 806 (D.C. Cir. 2006); *see also, e.g.*, *NRDC v. EPA*, 643 F.3d 311, 320 (D.C. Cir. 2011) ("[T]he Guidance binds EPA regional directors and thus qualifies as final agency action.").

As we explained in the opening memorandum (at 8-12), moreover, the August 2018 policy memorandum is a binding *legislative* rule as to which notice-and-comment procedures were required. Crucially, *the government does not contest this point* and thus concedes the issue. *High*, 242 F. Supp. 3d at 446 n.12. That matters because, "[i]f the Memorandum is a legislative rule, then it is final agency action under the APA subject to judicial review." *Broadgate Inc. v. USCIS*, 730 F. Supp. 2d 240, 244 (D.D.C. 2010); *accord Sierra Club v. EPA*, 873 F.3d 946, 951 (D.C. Cir. 2017); *Ctr. for Auto Safety*, 452 F.3d at 806. The government's concession that the August 2018 policy memorandum is a binding legislative rule is therefore fatal to its argument.

7

The cases cited by the government—all of which deal with as-applied challenges to discrete actions against an individual's immigration status—are simply inapposite. *See* P.I. Opp. 15 (citing *Qureshi v. Holder*, 663 F.3d 778 (5th Cir. 2011) (challenge to termination of family's *individual* asylum status); *Cabaccang v. USCIS*, 627 F.3d 1313 (9th Cir. 2010) (challenge to denial of *individual* adjustment-of-status applications); *Dhakal v. Sessions*, 895 F.3d 532 (7th Cir. 2018) (challenge to denial of *individual* asylum application); *Jama v. DHS*, 760 F.3d 490 (6th Cir. 2014) (challenge to termination of *individual* immigrant's refugee status)).

### E. The Court need not await the administrative record.

Without developing a full argument, the government asserts that it would be "wholly inappropriate" for the Court to enter partial summary judgment "before any administrative record has been compiled or proffered to the Plaintiffs." P.I. Opp. 1. That is quite incorrect.

Our requests for partial summary judgment and a preliminary injunction turn on purely legal issues—they have nothing to do with the administrative record. The text of the August 2018 memorandum is all the Court need consider to determine (1) whether it is a binding legislative rule that required USCIS to follow notice-and-comment procedures (it is, as the government concedes) and (2) whether its provisions are inconsistent with the text of the INA (they are, as the government concedes). That is precisely why we did not move for summary judgment on Counts 2 (arbitrary and capricious action) and 4 (due process), which may have required review of the record.

*Atieh v. Riordan*, 727 F.3d 73 (1st Cir. 2013), is inapposite. The issue there—whether the plaintiff's marriage was bona fide—was inherently fact-based. *Id*. at 75-56. No meaningful review of the immigration judge's underlying decision could have been had without the

8

administrative record. *Id.* at 76-77. And the plaintiff had wrongfully styled his complaint as a demand for declaratory relief, when it was really a petition for review under the APA. *Id.* at 75. Nothing in *Atieh* has relevance to this motion—a purely legal challenge to a binding legislative rule of broad applicability. The same goes for *United States v. Menendez*, 48 F.3d 1401 (5th Cir. 1995), which concerned whether a NOAA decision was properly "supported by substantial evidence." *Id.* at 1409. There is no such claim here.

### F. Plaintiffs have established irreparable harm, and the equities tip decidedly in their favor.

To begin with, the government's arguments regarding irreparable harm and the balance of equities are not relevant to our request for summary judgment. If the Court grants that motion, it need not address these issues.

In any event, we demonstrated in our opening memorandum (at 18-19) that both Ye and Li as well as the organizational plaintiffs will be irreparably harmed absent an injunction by February 4, 2019. Repeating the same arguments it made with respect to ripeness, the government suggests (P.I. Opp. 16-17) that individual plaintiffs must wait for that harm to actually befall them before bringing suit. As we have said, "Damocles's sword does not have to actually fall . . . before the court will issue an injunction." *League of Women Voters*, 838 F.3d at 9.

The government again paints plaintiffs' harms as speculative, asserting that "the inadmissibility ground [plaintiffs] ultimately fear is only triggered once a foreign national actually departs the United States and thereafter seeks admission within the 3- or 10-year inadmissibility period." P.I. Opp. 16. But the harm is happening *now*: Plaintiffs must either abandon their homes here in the United States by February 4, leaving behind their Army contracts and the lives they have built, or stay here knowing that they can never leave the coun-

9

try and expect to reenter it. This harm is already impacting Ye and Li, who must begin planning imminently—there is nothing speculative about it. It is also certain to have a real and immediate impact on the universities, whose community members are affected *now* and whose recruitment of diverse international students is inhibited *now*.

The government's balance-of-equities argument lacks substance. It bears emphasis that the government does not deny that its promulgation of the August 2018 policy memorandum was illegal under the APA and inconsistent with the plain text of the INA. That is enough, by itself, to resolve the balance of equities question, because "[t]he public has no interest in the enforcement of what is very likely an [unenforceable rule]." *Odebrecht Constr., Inc. v. Sec'y, Fla. Dep't of Transp.*, 715 F.3d 1268, 1290 (11th Cir. 2013). Put another way, "[f]rustration of federal statutes and prerogatives [is] not in the public interest, and [there can be] no harm from the [agency's] nonenforcement of invalid [rules]." *Id.* (citing *United States v. Alabama*, 691 F.3d 1269, 1301 (11th Cir. 2012)).

In any event, plaintiffs are not asking for an order that "enjoins a governmental entity from enforcing our immigration laws" (P.I. Opp. 19); they are simply asking for maintenance of the status quo ante, which had prevailed unchallenged for decades under both Democratic and Republican administrations. The Court should enjoin the agency from applying its unlawful-policy directive, adopted illegally without observation of the APA's procedural guarantees and in contravention of the governing statute. The requested preliminary injunction would not have any effect on the government's ability to deport individuals determined to be out-of-status; the sole question is whether the government can *also* apply a three- or ten-year reentry bar. It should go without saying that "there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations."

10

*League of Women Voters*, 838 F.3d at 12 (quotation omitted).

The balance of the equities thus overwhelmingly favors plaintiffs.

## CONCLUSION

For the foregoing reasons, and those in plaintiffs' principal brief, the Court should grant summary judgment and permanently enjoin and vacate the operation of the August 2018 memorandum on or before February 4, 2019. Alternatively, the Court should grant a preliminary injunction. And the Court should deny the government's motion to dismiss.

Respectfully submitted,

/s/ *Paul W. Hughes*

| | |
|---|---|
| H. Ronald Klasko* | Paul W. Hughes |
| Klasko Immigration Law Partners, LLP |    D.C. Bar No. 997235 |
| 1601 Market Street, Suite 2600 | Michael B. Kimberly |
| Philadelphia, PA 19103 |    D.C. Bar No. 991549 |
| (215) 825-8600 | Andrew A. Lyons-Berg* |
| rklasko@klaskolaw.com | Mayer Brown LLP |
| | 1999 K Street NW |
| *Counsel for Plaintiffs* | Washington, DC 20006 |
| | (202) 263-3000 |
| David J. Strom* | phughes@mayerbrown.com |
| Jessica Rutter* | mkimberly@mayerbrown.com |
| American Federation of Teachers | |
| 555 New Jersey Ave. NW | Cory S. Menees |
| Washington, DC 20001 |    N.C. State Bar No. 045111 |
| (202) 879-4400 | Mayer Brown LLP |
| dstrom@aft.org | 214 North Tryon Street, Suite 3800 |
| jrutter@aft.org | Charlotte, NC 28202 |
| | (704) 444-3500 |
| *Counsel for the American Federation of Teachers* | cmenees@mayerbrown.com |
| | *Counsel for Plaintiffs* |

\* *Notice of Special Appearance Forthcoming*

11

# CERTIFICATE OF SERVICE

I hereby certify that on January 21, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and have verified that such filing was sent electronically using the CM/ECF system to counsel for defendants.

Dated: January 21, 2019 /s/ *Paul W. Hughes*

# CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.3(d), I hereby certify that this reply contains 3,118 words, excluding the parts of the brief exempted by that rule.

Dated: January 21, 2019 /s/ *Paul W. Hughes*