# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

GUILFORD COLLEGE, GUILFORD COLLEGE )
INTERNATIONAL CLUB, THE NEW SCHOOL, )
FOOTHILL-DE ANZA COMMUNITY COLLEGE )
DISTRICT, HAVERFORD COLLEGE, THE )
AMERICAN FEDERATION OF TEACHERS, )
JIA YE, and SEN LI, )
           )
           Plaintiffs, )
           )
           v. )           1:18CV891
           )
KEVIN MCALEENAN,[1] U.S. DEPARTMENT OF )
HOMELAND SECURITY, L. FRANCIS CISSNA, )
and U.S. CITIZENSHIP AND IMMIGRATION )
SERVICES, )
           )
           Defendants. )

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

Plaintiffs initiated this action seeking declaratory and injunctive relief for Defendants' alleged violations of the Administrative Procedure Act (the "APA"), 5 U.S.C. § 701 *et seq.* (ECF Nos. 1, 14.) Specifically, Plaintiffs' lawsuit relates to the U.S. Citizenship and Immigration Services' ("USCIS") issuance and application of the August 9, 2018 Policy Memorandum, PM-602-1060.1, titled "Accrual of Unlawful Presence and F, J, and M Nonimmigrants," (the "August 2018 Policy Memorandum" or "Policy Memorandum"). (ECF Nos. 1, 14.) On January 28, 2019, the Court entered an Order temporarily restraining Defendants from applying the August 2018 Policy Memorandum to the individual Plaintiffs, Jia Ye ("Ye") and Sen Li

---

[1] Plaintiffs' Complaint names Kirstjen Nielsen, former Secretary of Homeland Security, as a Defendant in this action. (ECF Nos. 1, 14.) Secretary Nielsen resigned during the pendency of this action, and Kevin McAleenan currently serves as Acting Secretary of Homeland Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Secretary McAleenan is hereby substituted as a party to this action. *See* Fed R. Civ. P. 25(d).

("Li") (collectively, "Individual Plaintiffs"), pending the Court's resolution of the below motions. (ECF No. 36.)

Before the Court are: (i) Plaintiffs' Motion for Preliminary Injunction and Partial Summary Judgment, (ECF No. 15); and (ii) Defendants' Motion to Dismiss, (ECF No. 30).[2] The Court heard oral arguments on April 4, 2019. For the reasons set forth herein, the Court grants in part and denies in part Plaintiffs' Motion for Preliminary Injunction and Partial Summary Judgment, and Defendants' Motion to Dismiss will be denied.

## I.    BACKGROUND

Plaintiffs' Complaint alleges that, for over twenty years, F, J, and M nonimmigrant visa holders[3] who entered the United States for "duration of status," as opposed to a fixed time period, would begin to accrue unlawful presence[4] "on the day after a government official or immigration judge adjudicates the individual as out-of-status." (ECF No. 14 ¶¶ 5–6.) On August 9, 2018, Defendants issued the subject Policy Memorandum[5] which provides, in part,

---

[2] Plaintiffs also filed a Motion to Expand the Scope of the Temporary Restraining Order, (ECF No. 39), which was rendered moot at the April 4, 2019 hearing. (April 4, 2019 Hearing Transcript ("Tr.") at 2.)

[3] An F visa holder is a nonimmigrant student who enters the United States to pursue an educational program. (ECF No. 14 ¶ 74; *see also* ECF No. 14-1 at 2.) An M visa holder is a nonimmigrant student who enters the United States "to study at a vocational or technical school." (ECF No. 14 ¶ 75; *see also* ECF No. 14-1 at 2.) "Students on an F [or M] visa must be enrolled at an institution that participates in the Student and Exchange Visitor Program (SEVP)." (ECF No. 14 ¶¶ 74, 75.) A J visa holder is an individual who enters the United States to participate in an "Exchange Visitor Program" authorized by the U.S. Department of State. (ECF No. 14 ¶ 79; *see also* ECF No. 14-1 at 2.)

[4] Under the Illegal Immigration Reform and Immigrant Responsibility Act (the "IIRIRA"), "an alien is deemed to be unlawfully present in the United States if the alien is present in the United States after the expiration of the period of stay authorized by the Attorney General or is present in the United States without being admitted or paroled." (ECF No. 14 ¶¶ 85–86 (quoting 8 U.S.C. § 1182(a)(9)(B)(ii)).)

[5] Plaintiffs allege that prior to issuance of the new policy set forth in the August 2018 Policy Memorandum, "Defendants posted a memorandum (dated May 10, 2018) indicating an intent to revise longstanding policy and legal interpretation regarding the definition and calculation of 'unlawful presence.'" (ECF No. 14 ¶ 96 (citing ECF No. 14-2).)

2

that, for F, J, and M nonimmigrant visa holders, the USCIS was "changing its policy on how to calculate unlawful presence" under the Immigration and Nationality Act (the "INA"). (ECF No. 14-1 at 4; *see* ECF No. 14 ¶ 97.) Plaintiffs allege that "[p]ursuant to this new policy, USCIS will start the unlawful presence clock *not* on the date that an individual on an F, J, or M visa is adjudicated as being out-of-status. Instead, USCIS will *backdate* 'unlawful presence' to [begin] the date on which the underlying facts that gave rise to the status violation occurred." (ECF No. 14 ¶ 98.) Plaintiffs further allege that this action is harmful because any individual who is "unlawfully present" in the United States for a period longer than 180 days is barred from reentry into the United States for a period of either three or ten years.[6] (*Id.* ¶ 87 (citing 8 U.S.C. § 1182(a)(9)(B)(i)(I)).) Plaintiffs allege that "many more international students and employees will be subject to a three- or ten-year reentry bar as compared with the previous regulatory framework, even in the absence of any bad faith or . . . knowing conduct." (*Id.* ¶ 138 (footnote added).)

Plaintiffs' Complaint alleges four causes of action, namely, that the August 2018 Policy Memorandum is invalid because: (1) the Policy Memorandum was issued without complying with the rulemaking procedures mandated by the APA; (2) the Policy Memorandum is arbitrary and capricious under the APA; (3) the Policy Memorandum conflicts substantively with the statutory text of the INA; and (4) the Policy Memorandum violates the Due Process Clause of the Fifth Amendment. (*Id.* ¶¶ 185–221.) Plaintiffs' Motion for Preliminary Injunction and Partial Summary Judgment is based only on the first and third causes of action. (ECF No. 15 at

---

[6] The INA provides that any individual who is "unlawfully present in the United States for a period of more than 180 days but less than 1 year," is barred from reentry into the United States for three years. 8 U.S.C. § 1182(a)(9)(B)(i)(I). The INA further provides that an individual who is "unlawfully present in the United States for one year or more" is barred from reentry for ten years. *Id.* § 1182(a)(9)(B)(i)(II).

3

2.) Defendants, on the other hand, move to dismiss Plaintiffs' Complaint for lack of jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, or, in the alternative, for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6). (ECF No. 30.)

## II.  DEFENDANTS' MOTION TO DISMISS

### A.  <u>Legal Standards</u>

A Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction raises the question of "whether [the plaintiff] has a right to be in the district court at all and whether the court has the power to hear and dispose of [the] claim." *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012). The burden of establishing subject-matter jurisdiction is on the plaintiff. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). When evaluating a Rule 12(b)(1) motion, the court may consider evidence outside the pleadings and should grant the motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). Once a court determines it lacks subject-matter jurisdiction over a claim, the claim must be dismissed. *See Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 301 (4th Cir. 2009).

A motion made under Rule 12(b)(6) challenges the legal sufficiency of the facts in the complaint, specifically whether the complaint satisfies the pleading standard set forth in Rule 8 of the Federal Rules of Civil Procedure. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a complaint need not contain detailed factual

allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original). Rather, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* In other words, to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

## B.   Discussion

Defendants challenge this Court's jurisdiction based on the threshold issues of standing and ripeness,[7] each of which the Court addresses, in turn, below.

### 1.   Standing

"To establish standing under Article III of the Constitution, a plaintiff must 'allege (1) an injury that is (2) fairly traceable to the defendant's allegedly unlawful conduct and that is (3) likely to be redressed by the requested relief.'" *Bostic v. Schaefer*, 760 F.3d 352, 370 (4th Cir. 2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 590 (1992)). Where, as here, Plaintiffs sue to vindicate procedural rights—such as the right to have proposed regulatory action comply with the requirements of the APA—"they must establish the agency action threatens their concrete interest." *Mendoza v. Perez*, 754 F.3d 1002, 1010 (D.C. Cir. 2014). "Once that threshold is satisfied, [however,] the normal standards for immediacy and redressability are relaxed." *Id.*; *see Hodges v. Abraham*, 300 F.3d 432, 444 (4th Cir. 2002) ("Pursuant to the Court's decision in [*Lujan*], a person entitled to a 'procedural right,' . . . can thereby possess Article III standing

---

[7] Defendants' opposition to Plaintiffs' motion for preliminary injunction and partial summary judgment are also based solely on the jurisdictional issues of standing and ripeness. (*See* ECF No. 32 at 15–24.)

'without meeting all the normal standards for redressability and immediacy.'" (quoting *Lujan*, 504 U.S. at 572 n.7)). "[I]f the plaintiffs can demonstrate a causal relationship between the final agency action and the alleged injuries, the court will assume[ ] the causal relationship between the procedural defect and the final agency action." *Mendoza*, 754 F.3d at 1010 (second alteration in original) (internal quotation marks omitted).

While the instant action has been brought by a number of plaintiffs,[8] "the Supreme Court has made it clear that 'the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement." *Bostic*, 760 F.3d at 370 (quoting *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006)). Here, the Court finds that Individual Plaintiffs—Ye and Li— have standing to sue. Specifically, Ye and Li have sufficiently alleged injury arising from the August 2018 Policy Memorandum. Both individual Plaintiffs are foreign nationals who entered the United States on F-1 nonimmigrant student visas, and subsequently either graduated, or withdrew, from school. (ECF No. 16-1 ¶¶ 4, 10; ECF No. 16-2 ¶¶ 4, 10.) Ye and Li have been recruited by the U.S. Army to enter the Military Accessions Vital to National Interest ("MAVNI") program because they both "possess language skills in high demand by the [U.S.] military." (ECF No. 16-1 ¶ 6; ECF No. 16-2 ¶ 6.) In exchange for their enlistment in the U.S. Army through the MAVNI program, Individual Plaintiffs would be granted United States citizenship. (ECF No. 16-1 ¶ 6; ECF No. 16-2 ¶ 6.) Ye and Li have each signed an enlistment contract with the Army and they are awaiting orders to report to Basic

---

[8] Plaintiffs in this action are institutions that enroll international students; the international students association at one of those colleges; the American Federation of Teachers; and two foreign national individuals who allegedly entered the United States on F-1 visas. (*See generally* ECF No. 14 ¶¶ 20–64.)

Combat Training.[9]  (ECF No. 16-1 ¶¶ 7–8; ECF No. 16-2 ¶¶ 7, 9.)  Individual Plaintiffs were "told by the Army not to leave the United States while [they] wait for basic training."  (ECF No. 16-2 ¶ 8; *see* ECF No. 16-1 ¶ 9.)

Defendants argue that because, to date, neither Ye nor Li has received an official determination that he is out of status, "[it] remains entirely speculative whether [Individual Plaintiffs] will ever find themselves inadmissible" under the INA.  (ECF No. 32 at 16.) Defendants further argued at the April 4 hearing that "something actually needs to happen to [Individual Plaintiffs] before they can go into court."  (Tr. at 43.)  However, the Supreme Court has made clear that "where threatened action by *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 (2007).  Here, pursuant to the new policy set forth in the Policy Memorandum which started the accrual of unlawful presence for out-of-status nonimmigrants on August 9, 2018, it is likely that Individual Plaintiffs are presently accruing unlawful presence given that they are no longer enrolled in a course of study.  (ECF No. 14-1 at 4–5.)  Ye's 180-day clock expired on February 5, 2019, and Li's expired on February 20, 2019.  (*Compare* ECF No. 16-1 ¶ 10, *and* ECF No. 16-2 ¶ 10, *with* ECF No. 14-1 at 4–5.) Consequently, Ye and Li are likely to be subject to at least a three-year reentry bar if they are later adjudged to be out of status.  Therefore, based on the allegations and the evidence presently before the Court, the change in policy set forth in the August 2018 Policy Memorandum directly affects Ye and Li's concrete interest, *i.e.*, their ability to depart the United States and return without imposition of a reentry bar.  Moreover, this could occur to each

---

[9] Ye signed his Army enlistment contract on November 24, 2015, (ECF No. 16-2 ¶ 7), and Li signed his Army enlistment contract on January 14, 2016, (ECF No. 16-1 ¶ 7).

individual Plaintiff absent any notice that departing the United States would result in a bar to their reentry. Accordingly, the Court concludes that Individual Plaintiffs have sufficiently alleged harms to their concrete interests traceable to the August 2018 Policy Memorandum which will likely be redressed by the relief requested by Plaintiffs. Thus, at this preliminary phase, Individual Plaintiffs have met their burden of demonstrating standing to challenge the August 2018 Policy Memorandum in this action. *See, e.g., NAACP v. Trump*, 298 F. Supp. 3d 209, 224 n.9 (D.D.C. 2018) (holding that an undocumented individual to whom the government had extended deferred action under the Deferred Action for Childhood Arrivals ("DACA") policy "clearly satisfies the irreducible constitutional minimum of standing" to challenge the government's rescission of the DACA program). *See also Washington v. Trump*, 847 F.3d 1151, 1159 (9th Cir.) (citing *Lujan*, 504 U.S. at 561) ("At this very preliminary stage of the litigation, the [Plaintiffs] may rely on the allegations in their Complaint and whatever other evidence they submitted in support of their TRO motion to meet their burden."), *cert. denied Golden v. Washington*, 138 S. Ct. 448 (2017).

In addition to the individual Plaintiffs, an organizational plaintiff may have standing to sue in two ways: (i) on its own behalf (organizational standing); or (ii) on behalf of its members (representational or associational standing). *See White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 458 (4th Cir. 2005). A plaintiff may establish organizational standing "when it seeks redress for an injury suffered by the organization itself." *Id.* An injury is cognizable, for organizational standing purposes, when the plaintiff alleges that "a defendant's practices have hampered an organization's stated objectives causing the organization to divert its resources as a result." *Action NC v. Strach*, 216 F. Supp. 3d 597, 616 (M.D.N.C. 2016) (citing *Havens Realty Corp. v.*

*Coleman*, 455 U.S. 363, 379 (1982)). The American Federation of Teachers (the "AFT") alleges that "[s]ince the new DHS rules were announced, [it] has *invested* resources to address and mitigate the immediate and imminent harm to its members." (ECF No. 16-4 ¶ 14 (emphasis added).) However, there are no allegations by the AFT to reflect whether such investment constitutes a diversion of resources away from other advocacy activity. *See Action NC*, 216 F. Supp. 3d at 616. Nor are there allegations that such investment has impaired the AFT's ability to advance its mission by causing a drain on its resources. *See Havens Realty Corp.*, 455 U.S. at 379 (explaining that where defendant's practices "have perceptibly impaired" an organization's mission, causing a drain on the organization's resources, "there can be no question that the organization has suffered injury in fact"); *Lane v. Holder*, 703 F.3d 668, 674 (4th Cir. 2012) ("An organization may suffer an injury in fact when a defendant's actions impede its efforts to carry out its mission."). As a result, the AFT has failed to sufficiently allege facts necessary to demonstrate organizational standing.

Although the AFT has failed to establish standing in its own right, it may establish "representational standing" to sue on its members' behalf by alleging facts that demonstrate the following: "(1) its own members would have standing to sue in their own right; (2) the interests the organization seeks to protect are germane to the organization's purpose; and (3) neither the claim nor the relief sought requires the participation of individual members in the lawsuit." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) (quoting *Md. Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1251 (4th Cir. 1991)). Applying Supreme Court precedent, the Fourth Circuit has held that the first requirement of representational standing—demonstrating that an organization's members would

have standing to sue in their own right—requires an organization to "make specific allegations establishing that at least one *identified member* had suffered or would suffer harm." *Id.* (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009)). In this case, "AFT is a national labor union . . . [with] over 3,000 affiliated local unions[10] . . . throughout the United States and three [of its] territories." (ECF No. 16-4 ¶ 3 (footnote added).) Its members include individuals present in the United States on F and J visas, and its "mission includes advancing the interests of its members, including supporting commonsense policies that promote immigration opportunities for individuals who wish to serve as teachers." (ECF No. 14 ¶¶ 47–48, 181–82.) "To fulfill this mission, AFT advocates for its members' interests before government bodies and in court." (*Id.* ¶ 182.) The AFT has submitted the declarations of three individuals, each of whom are members of affiliated local unions who are presently in the United States on an F-1 or J-1 visa. (ECF Nos. 16-5, 16-6, 16-7.) Each declarant fears that he or she would suffer harm under the new policy for calculating unlawful presence as set forth in the August 2018 Policy Memorandum. (ECF Nos. 16-5, 16-6, 16-7.) Further, the interests the AFT seeks to protect in this action are germane to its stated purpose of "advocating for the civil rights of its members." (ECF No. 14 ¶¶ 47–49; ECF No. 16-4 ¶ 5.) Also, the Complaint alleges that "[n]either the claims asserted nor the relief requested in this lawsuit requires participation of individual AFT members." (ECF No. 14 ¶ 183.) The Court therefore finds that AFT has alleged sufficient facts to demonstrate that it has representational standing.

---

[10] According to the declaration of Rhonda Weingarten, President of the AFT, an individual becomes a member of the AFT "by joining an AFT affiliated local union, a council of locals or, in some cases, a statewide affiliate." (ECF No. 16-4 ¶ 5.)

In light of the Court's findings that Individual Plaintiffs and the AFT have standing which is sufficient for this Court to exercise jurisdiction over this action, at this time, the Court need not reach the issue whether the remaining plaintiffs—Guilford College, Guilford College International Club, The New School, Foothill-De Anza Community College District, and Haverford College—likewise have standing. *See Bostic*, 760 F.3d at 370; *Ezell v. City of Chicago*, 651 F.3d 684, 696 n.7 (7th Cir. 2011) ("Where at least one plaintiff has standing, jurisdiction is secure and the court will adjudicate the case whether the additional plaintiffs have standing or not." (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 264 (1977))).

## 2. Ripeness

With respect to the issue of ripeness, Defendants argue, in pertinent part, that this matter is not ripe given that that "there has not yet been final agency action" as to Individual Plaintiffs and "it remains entirely speculative" whether these Plaintiffs will be subject to the Policy Memorandum. (ECF No. 32 at 21, 22.) Plaintiffs argue, on the other hand, that they "do not challenge any particular, individual unlawful-presence determinations that have yet to take place[;] [r]ather, they bring an APA challenge against USCIS's global, binding policy, memorialized in the August 2018 directive," and, as such, this matter is ripe for adjudication. (ECF No. 33 at 6.) The Court agrees with Plaintiffs.

"Ripeness is a justiciability doctrine designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Nat'l Park Hosp. Ass'n v. Dep't of the Interior*, 538 U.S. 803, 807–08 (2003)

(internal quotation marks omitted). Thus, ripeness is essentially a question of timing. *Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 140 (1974).

In evaluating ripeness, courts must consider "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Cooksey v. Futrell*, 721 F.3d 226, 240 (4th Cir. 2013) (quoting *Nat'l Park Hosp. Ass'n*, 538 U.S. at 808). With respect to fitness, "[a] case is fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006). In this case, Plaintiffs' claims, which relate to the validity of the August 2018 Policy Memorandum, present legal questions. Further, the agency action in controversy, *i.e.*, promulgating the August 2018 Policy Memorandum, is final, having taken effect on August 9, 2018, (ECF No. 14-1 at 4). This matter is therefore "fit for judicial decision." *Miller*, 462 F.3d at 319.

With respect to hardship, courts consider "the immediacy of the threat and the burden imposed" on a plaintiff. *Charter Fed. Sav. Bank v. Office of Thrift Supervision,* 976 F.2d 203, 208–09 (4th Cir. 1992). Plaintiffs contend that, pursuant to the August 2018 Policy Memorandum, Individual Plaintiffs face the immediate threat of the likely imposition of a reentry bar were they to depart the United States. (ECF No. 16 at 9.) To that end, at the April 4 hearing, Defendants argued that, without Individual Plaintiffs having left the country, this matter is not ripe. (Tr. at 42.) Under Defendants' reasoning, however, were Individual Plaintiffs to wait until they departed the United States, any bar to their reentry would not be subject to judicial review under

12

the doctrine of consular nonreviewability.[11] *See Macena v. U.S. Citizenship & Immigration Servs.*, Civ. A. No. TDC-14-3464, 2015 WL 6738923, at *4 (D. Md. Nov. 2, 2015). While the injury faced by a plaintiff "must be certainly impending," "[w]e do not require parties to operate beneath the sword of Damocles until the threatened harm actually befalls them." *Iowa League of Cities v. E.P.A.*, 711 F.3d 844, 867 (8th Cir. 2013) (internal quotation marks omitted)). Accordingly, the Court finds that based on Plaintiffs' allegations, the implementation of the August 2018 Policy Memorandum presents an immediate threat and burden on Individual Plaintiffs. *See Pashby v. Delia*, 709 F.3d 307, 317 (4th Cir. 2013) ("For a claim to be ripe, it must involve an administrative decision [that] has been formalized and its effects felt in a concrete way by the challenging parties.'" (alteration in original) (internal quotation marks omitted)). The Court therefore concludes that this matter is ripe for judicial review.

Having determined that at least one plaintiff has standing to sue and that this matter is ripe for adjudication, Defendants' motion to dismiss is denied. The Court will next proceed to consider whether entry of a preliminary injunction is warranted.

## III. PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

### A. <u>Legal Standard</u>

A preliminary injunction is an extraordinary remedy involving the exercise of a very far-reaching power that is only to be employed in limited circumstances. *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001). Whether to grant a preliminary injunction is in

---

[11] "Although the . . . Fourth Circuit has yet to address the doctrine of 'consular nonreviewability,' other Courts of Appeals have consistently held that a doctrine of 'consular nonreviewability' precludes courts from reviewing a consular officer's decision to grant or deny a visa to a foreign national." *Macena v. U.S. Citizenship & Immigration Servs.*, Civ. A. No. TDC-14-3464, 2015 WL 6738923, at *4 (D. Md. Nov. 2, 2015) (internal citation omitted) (citing cases). *See United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950) ("[I]t is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien.").

13

the sound discretion of the court. *Westmoreland Coal Co. v. Int'l Union, United Mine Workers of Am.*, 910 F.2d 130, 135 (4th Cir. 1990). Courts generally issue preliminary injunctions in order to prevent irreparable harm and to preserve the ability of the court to render meaningful relief on the merits.[12] *United States v. South Carolina*, 720 F.3d 518, 524 (4th Cir. 2013). The party seeking a preliminary injunction bears the burden of justifying such relief. *Wagner v. Bd. of Educ.*, 335 F.3d 297, 302 (4th Cir. 2003).

To prevail on a motion for preliminary injunction, a party must establish that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm without preliminary injunctive relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "[A] clear showing" of likelihood of success on the merits and irreparable harm is required, in addition to satisfying the other factors for a preliminary injunction to be entered. *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346–47 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010).

### 1. Likelihood of Success on the Merits

The Court concludes that Plaintiffs have demonstrated a likelihood of success on the merits on their first and third causes of action: (i) that the August 2018 Policy Memorandum is invalid for failure to observe the APA's notice and comment procedures; and (ii) that the August 2018 Policy Memorandum substantively conflicts with the INA.[13]

---

[12] "[T]he findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding" on the Court's ultimate determination of the merits. *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

[13] Beyond their jurisdictional arguments of standing and ripeness, Defendants failed to include any arguments in their opposition brief which address the substantive merits, or lack thereof, of Plaintiffs' claims. (*See* ECF No. 32.) The Court entered its Order on January 28, 2019 setting the hearing on the instant motions for March 26, 2019, (ECF No. 36), which was later changed to April 4, 2019, (ECF No. 43). At the April 4 hearing, counsel for

"The APA requires that all 'rules' be issued through a statutorily prescribed notice-and-comment process."  *Children's Hosp. of the King's Daughters, Inc. v. Azar*, 896 F.3d 615, 619 (4th Cir. 2018) (citing 5 U.S.C. § 553(a)–(c)).  However, the APA's notice and comment requirements only apply to "legislative" or "substantive" rules.  *Lincoln v. Vigil*, 508 U.S. 182, 196 (1993) (citing 5 U.S.C. § 553(b)).  The notice and comment procedures do not apply to: (i) interpretative rules; (ii) general statements of policy;[14] or (iii) rules of agency organization, procedure, or practice.[15] *Id.* (citing 5 U.S.C. § 553(b)).  Failure to comply with the APA's notice and comment procedures renders a "legislative" or "substantive" rule invalid.  *See Chen Zhou Chai v. Carroll*, 48 F.3d 1331, 1341 n.9 (4th Cir. 1995) (explaining that if an interim rule promulgated by the Attorney General "were a substantive rule, it would have been invalid from the date of its issuance for failure to comply with the notice [and comment] requirements under 5 U.S.C. § 553").

The Fourth Circuit has instructed that "legislative[ ] rules . . . are rules issued by agencies pursuant to statutory authority and which implement the statute."  *Id.* at 1340; *accord Mendoza*, 754 F.3d at 1023 (finding agency pronouncements legislative because they "endeavor[ ] to implement the statute, the effect of a legislative rule" (alteration in original)).  The Supreme Court has "described a substantive rule—or a 'legislative-type rule,'—as one 'affecting individual rights and obligations.'"  *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 (1979) (internal citation

---

Defendants stated that Defendants "would be willing to get to the more substantive point[s]" underlying the instant suit "through an abbreviated briefing schedule or something along those lines."  (Tr. at 47.)

[14] "A rule is a general statement of policy if it does not establish a binding norm and leaves agency officials free to exercise their discretion."  *Chen Zhou Chai v. Carroll*, 48 F.3d 1331, 1341 (4th Cir. 1995).

[15] Rules of agency organization, procedure, or practice include rules that "do not alter the rights or interests of parties."  *Inova Alexandria Hosp. v. Shalala*, 244 F.3d 342, 349 (4th Cir. 2001) (internal quotation marks omitted).

omitted) (quoting *Morton v. Ruiz*, 415 U.S. 199, 232, 236 (1974)). Further, "[a] rule is legislative if it supplements a statute, adopts a new position inconsistent with existing regulations, or otherwise effects a substantive change in existing law or policy." *Children's Hosp.*, 896 F.3d at 620 (alteration in original) (quoting *Mendoza*, 754 F.3d at 1021). By contrast, "the critical feature of interpretive rules is that they are issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers." *Id.* (internal quotation marks omitted) (quoting *Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1204 (2015)).

Here, the August 2018 Policy Memorandum explicitly states that "to improve how USCIS *implements* the unlawful presence ground of inadmissibility under [the] INA, . . . USCIS is now *changing its policy* on how to calculate unlawful presence." (ECF No. 14-1 at 4 (emphasis added).) *See Jerri's Ceramic Arts, Inc. v. Consumer Prod. Safety Comm'n*, 874 F.2d 205, 208 (4th Cir. 1989) ("In deciding whether [an agency statement] is an interpretative [or legislative] rule, this court should consider the [agency's] intent in authoring it, as ascertained by an examination of the provision's language, its context, and any available extrinsic evidence." (internal quotation marks omitted)). To effect this new change in policy, USCIS has inserted its revised definition of unlawful presence, as reflected in the Policy Memorandum, into its USCIS Adjudicator's Field Manual. (ECF No. 14 ¶ 99; ECF No. 14-1 at 10.) The USCIS Adjudicator's Field Manual, in turn, states that "policy material is binding upon *all* employees of USCIS, unless or until it is specifically superseded by other policy material. There are no exceptions to this rule." (ECF No. 14 ¶ 129 (citing *USCIS Adjudicator's Field Manual* § 3.4(b)); *see also id.* ¶ 130.) Further, the August 2018 Policy Memorandum bears reference number, "PM-602-1060.1," (ECF No. 14-1 at 2), and according to the USCIS Adjudicator's Field Manual, "[e]xamples of policy materials"

include: "Field and Administrative Manuals" and "Memoranda and cables from Headquarters specifically designated as policy (bearing the 'P' suffix in the reference file number),'" (ECF No. 14 ¶ 130 (quoting USCIS, *USCIS Adjudicator's Field Manual* § 3.4(a))). Here, based on the explicit language of the Policy Memorandum, its stated purpose, its designation as policy material as described in the USCIS Adjudicator's Field Manual, and its binding effect on adjudicators, the Court finds that Plaintiffs are likely to succeed in showing that the August 2018 Policy Memorandum is a legislative rule.

For a legislative rule to be valid however, it must have been promulgated in compliance with the APA's notice and comment procedures. *See* 5 U.S.C. § 553. Plaintiffs allege that USCIS failed to publish notice of its proposed change in policy in the Federal Register. (ECF No. 14 ¶¶ 15, 186–92.) *See* 5 U.S.C. § 553(b) ("General notice of proposed rule making *shall* be published in the Federal Register[.]" (emphasis added)). Plaintiffs also allege that although Defendants issued a policy memorandum on May 10, 2018 proposing its policy changes for calculating unlawful presence and providing a period for public comments, such memorandum was not published in the Federal Register, as required under the APA. (ECF No. 14 ¶¶ 115–20). *Util. Solid Waste Activities Grp. v. EPA*, 236 F.3d 749, 754 (D.C. Cir. 2001) (explaining that the APA "requires notice of any proposed rule to be published in the Federal Register"); *see also Rodway v. U.S. Dep't of Agric.*, 514 F.2d 809, 815 (D.C. Cir. 1975) ("Only publication in the *Federal Register* meets the APA requirement of constructive notice."). Further, while "[m]embers of the public submitted comments in response to the May 10 notice," Plaintiffs allege that the agency "did not provide a reasoned response to those comments," and, instead, issued a press release stating that "[a]s a result of public engagement and stakeholder feedback, USCIS has adjusted

17

the unlawful presence policy to address a concern raised in the public's comments." (ECF No. 14 ¶ 117 (citing ECF No. 14-5).) *See Perez*, 135 S. Ct. at 1203 ("An agency must consider and respond to significant comments received during the period for public comment."); *North Carolina v. FAA*, 957 F.2d 1125, 1135 (4th Cir. 1992) (stating that an agency must "reasonably respond to those comments that raise significant problems"). The Court therefore concludes that Plaintiffs have demonstrated a likelihood of success with respect to their claim that the August 2018 Policy Memorandum was promulgated in violation of the APA's notice and comment procedures for rulemaking.

### b)  *Conflict with the INA*

The Court also finds that Plaintiffs will likely succeed on their claim that the August 2018 Memorandum conflicts with the INA. As outlined above, Plaintiffs' Complaint alleges that Congress first included the concept of "unlawful presence" as part of the INA by passing the Illegal Immigration Reform and Immigrant Responsibility Act (the "IIRIRA") in 1996.[16] (ECF No. 14 ¶¶ 85–89); *see* Pub. L. No. 104-208, div. C, § 301(b)(1), 110 Stat. 3009-546, 3009-576 (1996) (enacting the current 8 U.S.C. § 1182(a)(9)). According to the Complaint, prior to the enactment of IIRIRA, the INA contained "other related concepts," namely, "unlawful status" and "unlawful immigration status." (ECF No. 14 ¶ 206.)

Plaintiffs claim that the fact that Congress, in the IIRIRA, chose to create an entirely new category of "unlawful presence," rather than simply using the existing language of "unlawful

---

[16] *See supra* at 2 n.4.

status," means that the two categories cannot be the same.[17] (*See id.* ¶¶ 205–206.) "[W]hen the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended." *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 102 n.5 (2012) (quoting *Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n.9 (2004)); *see also Cunningham v. Scibana*, 259 F.3d 303, 308 (4th Cir. 2001) ("Although the two terms are quite similar, we must assume that Congress made a deliberate choice to use different language.").

Plaintiffs allege that by redefining "unlawful presence" to begin to accrue on the day that a nonimmigrant's lawful status lapses, the Policy Memorandum renders both concepts— "unlawful presence" and "unlawful status"—essentially synonymous. (*See* ECF No. 14 ¶¶ 203– 211.) Thus, it appears likely that, based on the statutory text of the IIRIRA, unlawful presence for a nonimmigrant alien does not begin to accrue until an adjudicator determines that the individual is out of status. To the extent that the Policy Memorandum mandates a different start date for calculating the accrual of unlawful presence, the Policy Memorandum may conflict with the IIRIRA's provision defining unlawful presence. The Court, therefore, concludes that Plaintiffs have demonstrated a likelihood of success on their claim that the August 2018 Policy Memorandum's method for calculating unlawful presence conflicts with existing law and is therefore invalid.

### 2. Irreparable Harm

The Court must next consider whether Plaintiffs are "likely to suffer irreparable harm in the absence of preliminary relief." *Winter*, 555 U.S. at 20. Here, Individual Plaintiffs, Ye and Li,

---

[17] Elsewhere in the IIRIRA Congress *did* employ unlawful status language. Pub. L. 104-208, div. C, § 330(a)(1)(B)(i), 110 Stat. at 3009-631 (1996) (referring to "any alien who . . . is not in lawful immigration status in the United States.").

allege that USCIS may maintain that their student status lapsed prior to August 9, 2018 and August 24, 2018, respectively. (ECF No. 16-1 ¶ 10; ECF No. 16-2 ¶ 10.) Therefore, under the terms of the August 2018 Policy Memorandum, as of February 6, 2019 and February 21, 2019, respectively, Ye and Li appear to have exceeded 180 days of unlawful presence.[18] (*See* ECF No. 14-1 at 4–5.) The AFT likewise alleges that some of its members present in the United States on F or J nonimmigrant visas may likely fall out of status and accrue unlawful presence without their knowledge due to technical status violations. (*See* ECF No. 16-4 ¶¶ 6, 7, 12–13; *see also* ECF No. 14 ¶¶ 48–49, 137–40, 149–50.) Pursuant to the terms of the Policy Memorandum, such members will likely be forced to depart the United States, or be subject to a reentry bar if they depart the United States without knowing that they have exceeded 180 days of unlawful presence. Absent injunctive relief, upon departure from the United States, Ye and Li, as well as AFT members on F or J nonimmigrant visas, will likely be subject to imposition of a three or ten-year reentry bar before having an opportunity to cure any status violations. Moreover, once the reentry bar has been imposed, judicial review will likely be precluded by the doctrine of consular nonreviewability, which holds that "courts lack jurisdiction to review a consular officer's decision to grant or deny a visa." *Int'l Refugee Assistance Project v. Trump*, 883 F.3d 233, 277–78 (4th Cir. 2018), *vacated on other grounds*, 138 S. Ct. 2710 (2018) (citing *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999)). The Court therefore finds that Plaintiffs are likely to suffer irreparable harm absent entry of a preliminary injunction.

---

[18] As previously stated, under the INA, any individual who is "unlawfully present in the United States for a period of more than 180 days but less than 1 year," is barred from reentry into the United States for three years. 8 U.S.C. § 1182(a)(9)(B)(i)(I).

### 3. Balance of Equities and Public Interest

"When a private party seeks injunctive relief against the government, the final two injunction factors—the balance of equities and the public interest—generally call for weighing the benefits to the private party from obtaining an injunction against the harms to the government and the public from being enjoined." *Doe v. Mattis*, 889 F.3d 745, 766 (D.C. Cir. 2018); *accord, e.g., Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)) ("When the government is a party, these last two factors merge.").

The Court finds that, under the circumstances of this case, the equities and public interest factors weigh in favor of granting injunctive relief. An injunction will prevent the harms outlined above for Plaintiffs, along with similarly situated individuals and institutions across the country. The record does not reflect any countervailing harm to the government in maintaining the status quo[19] by returning, for the duration of this lawsuit, to a policy that it voluntarily followed for over twenty years. Further, given Plaintiffs' demonstration of the likelihood of success on their claim that the August 2018 Memorandum was adopted in violation of the APA, "there is a substantial public interest in having [Defendants] abide by the federal laws that govern their . . . operations." *League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (internal quotation marks omitted); *Nat'l Ski Areas Ass'n v. U.S. Forest Serv.*, 910 F. Supp. 2d 1269, 1290 (D. Colo. 2012) (concluding that "there is a public interest in ensuring that federal

---

[19] A preliminary injunction is intended to serve the limited purpose of preserving the status quo during the pendency of the litigation in order to prevent irreparable harm and to preserve the ability of the court to render meaningful relief on the merits. *South Carolina*, 720 F.3d at 524. The Fourth Circuit "has defined the status quo as the 'last uncontested status between the parties which preceded the controversy.'" *Pashby*, 709 F.3d at 320 (quoting *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 378 (4th Cir. 2012)).

agencies adhere to the rule-making processes in the APA"). Based on the above, the Court concludes that a preliminary injunction is warranted in this matter.

## IV. SCOPE OF INJUNCTIVE RELIEF

Having concluded that, under the circumstances here, injunctive relief is warranted, the Court must now determine the appropriate scope of the injunction. "Absent the clearest command to the contrary from Congress, federal courts retain their equitable power to issue injunctions in suits over which they have jurisdiction." *Califano v. Yamasaki*, 442 U.S. 682, 705 (1979). Accordingly, "district courts have broad discretion when fashioning injunctive relief." *Ostergren v. Cuccinelli*, 615 F.3d 263, 288 (4th Cir. 2010). *See Dixon v. Edwards*, 290 F.3d 699, 710 (4th Cir. 2002) ("When a district court grants an injunction, the scope of such relief rests within its sound discretion."). Such relief "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Kentuckians for Commonwealth, Inc. v. Riverburgh*, 317 F.3d 425, 436 (4th Cir. 2003) (quoting *Califano*, 442 U.S. at 702). "[T]he scope of injunctive relief is dictated by the extent of the violation established, not by the geographical extent of the plaintiff class." *Califano*, 442 U.S. at 702.

Plaintiffs seek entry of "a preliminary injunction suspending the effectiveness, pending resolution of this lawsuit, of the [August 2018 Policy Memorandum]" as well as "the memorandum with the same title issued on May 10, 2018."[20] (ECF No. 15 at 1.) Defendants oppose Plaintiffs' request for nationwide injunctive relief, characterizing such request as one based on a "generalized grievance." (ECF No. 42 at 3.) As Defendants correctly contend, the Fourth Circuit has explained:

---

[20] *See supra* at 2 n.5.

> [Courts] are woefully ill-suited . . . to adjudicate generalized
> grievances asking us to improve an agency's performance or
> operations. In such a case, courts would be forced either to enter
> a disfavored "obey the law" injunction, or to engage in day-to-day
> oversight of the executive's administrative practices. Both
> alternatives are foreclosed by the APA, and rightly so.

(*Id.* (quoting *City of New York v. U.S. Dep't of Defense*, 913 F.3d 423, 431 (4th Cir. 2019))).

However, the Fourth Circuit also explained in *City of New York* that "[c]ourts are well-suited to

reviewing specific agency decisions, such as *rulemakings*, orders, or denials." *City of New York*,

913 F.3d at 431 (emphasis added). Accordingly, as discussed above, the Court finds that

Plaintiffs are likely to succeed on its claims that the subject Policy Memorandum is a legislative

rule promulgated in violation of the APA's rulemaking procedures, and that the Policy

Memorandum conflicts with the INA. Therefore, this Court has the power to review the

rulemaking at issue and, if appropriate, preliminarily enjoin Defendants' challenged action.

Defendants also argue that "Plaintiffs' request for [nationwide] injunctive relief suffers

from gross overbreadth," and "goes well beyond any circumstances in this case." (ECF No. 42

at 5, 6.) In support of their contention, Defendants cite *PBM Products, LLC v. Mead Johnson &*

*Co.*, 639 F.3d 111 (4th Cir. 2011) and *Hayes v. North State Law Enforcement Officers Ass'n*, 10 F.3d

207, 217 (4th Cir. 1993). (ECF No. 42 at 5). In *PBM,* an infant formula manufacturer brought

an action under the Lanham Act against a competitor for false advertising. 639 F.3d at 116.

Following a jury verdict in favor of the plaintiff manufacturer, the district court issued a

permanent injunction prohibiting the defendant's use of certain false statements in all

advertising or promotional material going forward. *Id.* at 118–19. In concluding that the district

court's entry of injunctive relief was proper, the Fourth Circuit explained that "the Lanham Act

vests district courts with the 'power to grant injunctions'" when a violation of the Act has been

proven. *Id.* at 126 (quoting 15 U.S.C. § 1116(a)). Further, in upholding the breadth of the district court's injunction, the Fourth Circuit rejected the defendant's argument that the district court enjoined conduct "beyond the harm [plaintiff] sought to redress." *Id.* at 126. The Fourth Circuit explained that the injunction was not overbroad because it only addressed the specific conduct that the district court found to be in violation of the Lanham Act. *Id.* at 128.

Similarly, here, the APA vests the district courts with the power to "set aside agency action" found to be unlawful. 5 U.S.C. § 706(2). Additionally, because this Court has determined that Plaintiffs will likely succeed in their challenge to the lawfulness of the August 2018 Policy Memorandum, the relief would likely result in a nationwide injunction prohibiting enforcement of the Policy Memorandum. *See Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1401 (D.C. Cir. 1998) (affirming district court entry of a nationwide injunction upon finding an agency rule invalid).

In *Hayes*, the Fourth Circuit vacated an injunction issued by the district court which "enjoin[ed] all use of racially based criteria by the City of Charlotte in its employment decisions." 10 F.3d at 217. The Fourth Circuit found that the injunction was overbroad where "[t]he only policy challenged . . . was the police department's promotion policy [for] sergeants." *Id.* According to the Fourth Circuit, "[t]he injunction clearly went further than was required to award full relief to the [p]laintiffs in [that] case" given that there was "no controversy with regard to the entire City's employment decisions." *Id.*

*Hayes* is distinguishable from the instant action in which Plaintiffs challenge the lawfulness of the August 2018 Policy Memorandum. In this context, "[w]hen a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are

24

vacated—not that their application to the individual petitioners is proscribed." *Nat'l Mining Ass'n*, 145 F.3d at 1409 (alteration in original). Courts have, thus, found a nationwide injunction appropriate in such cases. *See, e.g., S.C. Coastal Conservation League v. Pruitt*, 318 F. Supp. 3d 959, 968, 969–70 (D.S.C. 2018) (finding that the government failed to comply with APA requirements in implementing agency rule and enjoining the rule nationwide); *Texas v. United States*, 201 F. Supp. 3d 810, 835–36 (N.D. Tex. 2016) (concluding that because plaintiffs demonstrated a likelihood of success on their claim that defendants' written directives violated APA requirements, an "injunction should apply nationwide"); *Nat'l Fed'n of Indep. Bus. v. Perez*, Civ. A. No. 5:16-cv-00066-C, 2016 WL 3766121, at *46 (N.D. Tex. June 27, 2016) (entering nationwide preliminary injunction and explaining that "[w]here a party brings a facial challenge alleging that agency action violated APA procedures, a nationwide injunction is appropriate"). Thus, because Plaintiffs have shown a likelihood of success on their claims that the August 2018 Policy Memorandum was promulgated in violation of the APA, and is therefore invalid, this Court likewise concludes that a nationwide injunction is appropriate.

Defendants further argue that, under "Article III standing principles," injunctive relief should be "limit[ed] . . . to the bounds of what is necessary to prevent injury to the Plaintiffs in the case before the court." (ECF No. 42 at 8.) However, "an injunction is not necessarily made overbroad by extending the benefit of protection to persons other than prevailing parties in the lawsuit—even if it is not a class action—*if such breadth is necessary to give prevailing parties the relief to which they are entitled*." *Bresgal v. Brock*, 843 F.2d 1163, 1170–71 (9th Cir. 1987). *See id.* at 1169 ("There is no general requirement that an injunction affect only the parties in the suit."). Under the APA, should Plaintiffs prevail on their underlying claims, the new policy set forth in the

Policy Memorandum will be set aside as unlawful as applied to anyone who would be subject to the policy, including Plaintiffs.

Defendants also argue that a nationwide injunction "would interfere with other courts' ability to decide similar issues or cases with actual developed facts." (ECF No. 42 at 9.) Yet, "limiting the geographic scope of an injunction on an immigration enforcement policy 'would run afoul of the constitutional and statutory requirements for uniform immigration law and policy.'" *Regents of Univ. of California v. U.S. Dep't of Homeland Sec.*, 279 F. Supp. 3d 1011, 1049 (N.D. Cal. 2018) (quoting *Washington*, 847 F.3d at 1167), *aff'd*, 908 F.3d 476 (9th Cir. 2018). *See Hawaii v. Trump*, 878 F.3d 662, 701 (9th Cir. 2017), *rev'd on other grounds*, 138 S. Ct. 2392 (2018) ("Because this case implicates immigration policy, a nationwide injunction was necessary to give Plaintiffs a full expression of their rights."). The Court therefore concludes that, under the circumstances of this case, a nationwide preliminary injunction is appropriate. Defendants shall be enjoined from enforcing the policy set forth in the August 2018 Policy Memorandum, in all its applications nationwide, pending resolution of this lawsuit.

## V. PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs also move for partial summary judgment, specifically related to the first and third causes of action discussed above. (ECF No. 15 at 1–2.) In their response brief, Defendants argued that "summary judgment at this time in an APA case—before any administrative record has been compiled or proffered to the Plaintiffs—is wholly inappropriate." (ECF No. 32 at 9.) Defendants provided no further argument as to the merits

of the two claims which are the subject of Plaintiffs' motion for partial summary judgment. [21] In

Plaintiffs' briefing in support of their partial summary judgment motion, they argue, in part, that

"[t]he Court need not await the administrative record," as the two claims on which they seek

partial summary judgment present "purely legal issues" which "have nothing to do with the

administrative record." (ECF No. 33 at 12–13; *see* Tr. at 68–72.) Plaintiffs further argued that

given Defendants' failure to address the merits of Plaintiffs' first and third claims, Defendants

have "conceded the illegality of USCIS's conduct for purposes of summary judgment." (ECF

No. 33 at 6.) Notwithstanding Defendants' failure to respond, motions for summary judgment,

particularly in the APA context, should not be granted in the absence of a full administrative

record. *See Nieves v. McHugh*, 111 F. Supp. 3d 667, 679–80 (E.D.N.C. 2015) ("[I]n an APA claim,

'summary judgment becomes the mechanism for deciding, as a matter of law, whether the

agency action is supported by the administrative record and otherwise consistent with the APA

standard of review.'" (quoting *Ohio Valley Envtl. Coal. v. Hurst*, 604 F. Supp. 2d 860, 879 (S.D.W.

Va. 2009))); *see also Atieh v. Riordan*, 727 F.3d 73, 76 (1st Cir. 2013) ("Allowing the allegations of a

complaint to become the focal point of judicial review introduces an unnecessary and inevitably

unproductive step into the process. The relevant inquiry [of an APA claim] is—and must

---

[21] At the April 4 hearing, counsel for Defendants explained the government's failure to submit briefing in
response to Plaintiffs' motion for partial summary judgment as follows:

> I think the circumstances of us at the point that we were responding to
> [Plaintiffs'] motion for summary judgment was such that the government had
> been shut down since late December and we had to file in early January while
> the government was still shut down. Simply put, it was simply very, very
> difficult to respond to everything in that short amount of time while -- and
> even compile any sort of record to adequately respond to [Plaintiffs'] motion
> for summary judgment.

(Tr. at 71.)

remain—not whether the facts set forth in a complaint state a plausible claim but, rather, whether the administrative record sufficiently supports the agency's [action].").

The Court will, therefore, permit the parties to file cross-motions for summary judgment in accordance with an expedited briefing schedule set forth in a separate Order which shall be filed contemporaneously with this Memorandum Opinion and Order.

**[ORDER FOLLOWS ON NEXT PAGE]**

For the reasons outlined herein, the Court enters the following:

## ORDER

IT IS THERFORE ORDERED that Plaintiffs' Motion for Preliminary Injunction and Partial Summary Judgment, (ECF No. 15), is GRANTED IN PART and DENIED IN PART. The motion is GRANTED in that the Court hereby enjoins implementation, in all applications, of the memorandum titled "Accrual of Unlawful Presence and F, J, and M Nonimmigrants," issued by Defendant United States Citizenship and Immigration Services on August 9, 2018 and bearing the file number PM-602-1060.1, as well as the memorandum with the same title issued on May 10, 2018 and bearing file number PM-602-1060, until further order of this Court. The motion is DENIED WITHOUT PREJUDICE to the extent it seeks partial summary judgment on the first and third causes of action alleged in Plaintiffs' First Amended Complaint.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss, (ECF No. 30), is hereby DENIED.

IT IS FURTHER ORDERED that the parties shall engage in expedited summary judgment briefing as set forth in a separate Order which shall be filed contemporaneously with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that Plaintiff's Motion to Expand the Scope of the Temporary Restraining Order, (ECF No. 39), is DENIED AS MOOT.

This, the 3rd day of May, 2019.


/s/ Loretta C. Biggs
United States District Judge